[Civil No. 1497.   Filed May 12, 1916.]

[157 Pac. 228.]

CITY OF BISBEE, a Municipal Corporation, Appellant, v. BISBEE IMPROVEMENT COMPANY, a Corporation, and W. H. BROPHY, Appellees.

ELECTRICITY—FRANCHISES—FORFEITURE—WAIVER.—A city granted to a gas company, its successor and assigns, a city electric system franchise on condition that it should install an electric system in the city within eighteen months. The gas company duly accepted the franchise and assigned it to a power company, which did not comply with its terms within the eighteen months, except by mere colorable construction, later destroyed by fire. The franchise was then sold at a foreclosure sale to one from whom for valuable consideration the defendant purchased it in good faith, knowing its history, but not knowing that the city intended to forfeit or cancel it. The defendant at the time of purchase had a complete and operating electric system in the city and tendered full performance of the franchise requirements. There was no complaint by any citizen of nonuser of the franchise nor of defendant's operation under it since its acquisition. Shortly after the purchase the city took steps to forfeit and cancel the franchise. *Held,* the franchise by full performance by defendant had become an inviolable executed contract, which the city could not forfeit.

[As to whether judicial declaration of breach of condition is essential to a forfeiture of franchise, see note in 5 Am. St. Rep. 803.]

APPEAL from a judgment of the Superior Court of the County of Cochise. A. C. Lockwood, Judge. Affirmed.

Mr. Edward J. Flanigan, for Appellant.

Messrs. Ellinwood & Ross and Mr. James S. Casey, for Appellees.

ROSS, C. J.—This case was tried in the lower court upon an agreed statement of facts, as provided in paragraph 510 of Civil Code of 1913, and is before us on appeal upon the same statement of facts.

The city of Bisbee is a municipal corporation. The appellee, Bisbee Improvement Company, is a public service

corporation. On December 28, 1906, it owned and operated an electric light plant and power system in the city of Bisbee and was furnishing electric lights and power to the residents of the city and its adjacent suburbs and settlements. It had been performing such public service for some time prior thereto, but just how long is not shown, and has continued such public service ever since. On December 28, 1906, the appellant city granted to the International Gas & Light Company, its successors and assigns, a franchise to maintain an electric light and power system and build pole lines and conduits along and under the public streets, highways and alleys of the city of Bisbee.

The ordinance granting the franchise in dispute in section 1 provides for such grant to the International Gas & Light Company, its successors and assigns, for a period of twenty five years, with the right to enter upon and use its streets and alleys for the purpose of erecting an electric light and power system. Section 3 provides that:

"The grantee of this franchise, its successors and assigns, shall have an electric system in operation in the city of Bisbee within eighteen months from the granting hereof."

Section 4 requires the grantee to execute a bond to the city in the sum of $1,000, conditioned that the grantee, its successors and assigns, shall well and truly observe, fulfill and perform each and every term and condition contained in section 3, and in case of any breach of such condition, the whole penal sum should be liquidated damages. Section 5 requires that the grantee or assigns file a written acceptance of the terms and conditions of the ordinance within twenty days after its passage. Section 6 provides the maximum amount to be charged should be twenty cents per kilowatt hour, with free lamp renewals to all consumers paying regular lighting rates, and that the grantee furnish to the city of Bisbee free of charge 225 kilowatt hours per month for lighting the city hall and other city buildings, and furnish street lighting at the rate of ten cents per kilowatt hour. The sections unnoticed have no bearing upon the questions involved. The grantee accepted the franchise and filed bond as provided in ordinance.

On January 16, 1908, the latter company, without having done anything toward installing an electric system, assigned

and conveyed its rights and franchises to the Bisbee Light & Power Company. Within one week prior to the time within which the ordinance provided that the electric system should be in operation, the Bisbee Light & Power Company constructed "and in four days' time completed an electric system within the city, . . . and therewith and therefrom furnished three consumers of electric light in the immediate vicinity of said plant with electric incandescent lights, . . . and at a point on one of the public streets of the city installed and furnished electric current for four 16-candle power electric lamps," at an expenditure not exceeding $700. "Said system was constructed and installed for the sole purpose of complying or attempting to comply colorably or technically with the terms and provisions" of the ordinance granting the franchise. This electric system and its equipment were destroyed by fire on the fourteenth day of October, 1908, and were never rebuilt.

The franchise granted to the International Gas & Light Company, its successors and assigns, together with a gas franchise, a valuable and extensive gas system, with rights appurtenant, were on June 26, 1911, at a foreclosure sale, sold, assigned and conveyed to one W. J. Ainsworth, who thereafter, on July 1, 1911, for a valuable consideration, transferred all of his title to said property to the appellee.

The city took no steps or action looking toward a repeal of the ordinance granting the franchise or a cancellation or forfeiture of the franchise and privileges therein granted until the nineteenth day of July, 1911, when it first obtained knowledge of the appellee's ownership of said franchise. Appellee completed its purchase of the franchise without any knowledge that the city questioned or intended to question the validity of the ordinance granting the franchise.

At the time appellee purchased the franchise in question it knew substantially what had been done by its predecessors under the ordinance granting the franchise, and knew the history of the ordinance from its adoption and the facts in relation to the electric system installed and its destruction by fire. Appellee, upon the completion of the purchase, assumed possession of all the property, franchises and privileges so purchased, and proceeded by way of compliance with the

requirements and stipulations of the ordinance granting the franchise, as follows:

On July 16, 1911, it published a notice in a paper of general circulation in the city of Bisbee to the effect that it had bought out the Bisbee Light & Power Company and had assumed control of the gas plant and business of the latter company. In like manner on July 19th and 20th it published notice that on and after the first day of August, 1911, free lamp renewals would be furnished by it to all of its customers paying regular lighting rates. After August 1st it furnished free lamp renewals to all its customers as advertised in said notice, and to five of its patrons before August 1st and after July 19th. The agreed statement of facts shows that since appellee acquired the franchise in dispute it has furnished customers with electricity at prices within the terms of the ordinance, and has furnished the city and offered to furnish the city electricity strictly within the terms of said ordinance, but that the city has refused to accept any deductions or free lights.

On July 21st the common council of the city of Bisbee passed a resolution questioning the validity of the franchise for lack of compliance with its terms, and notified appellee of its purpose to revoke said franchise and repeal the ordinance granting the same. On the twenty-seventh day of July, and after a hearing, at which appellee was represented by its attorney, a resolution was passed by the common council of the city declaring that all and singular the rights, privileges, licenses and franchises vested or purporting to be vested in said International Gas & Light Company, its successors and assigns, and in the Bisbee Improvement Company, claiming as assignee thereof, were revoked, withdrawn and annulled, and the contract therein made or purporting to have been made by the adoption and passage of said ordinance or evidenced thereby was rescinded, annulled and abrogated. Thereafter, on August 18, 1911, an ordinance was duly passed by the mayor and common council of the city of Bisbee repealing the ordinance granting the franchise to the International Gas & Light Company, its successors and assigns. The appellee continuing to exercise the rights, privileges and franchises granted under said ordinance, on December 20,

XVIII Ariz.—9

1911, the city of Bisbee brought this action to obtain a judicial confirmation of the revocation and cancellation of said ordinance and the franchises thereunder. Judgment was entered in favor of the Bisbee Improvement Company, and the city prosecutes this appeal. It makes three assignments of error, but we think the point involved is well expressed in its assignment No. 2, which is as follows:

"The court erred in rendering judgment in favor of the defendant Bisbee Improvement Company on the agreed statement of facts and against the plaintiff, because at the time said defendant acquired its alleged rights under Ordinance No. 102 by said purchase the same was subject to rescission, cancellation and forfeiture in suit by the plaintiff by reason of the failure of defendants' predecessors in interest to perform the obligations thereof in any substantial way, and, buying with full notice, and at an execution sale, it acquired only such rights as its predecessors could convey."

It will be observed from this assignment that it is the contention of the appellant that the franchise in dispute was subject to rescission, cancellation and forfeiture in a suit by it at the time that the appellee became the owner thereof. It is insisted that, because the city of Bisbee had the right and might have instituted proceedings to cancel and annul the franchise on July 1, 1911, the date of the transfer of the franchise to appellee, that right was unaffected by reason of a change of ownership. The correctness of this proposition, it would seem, hinges upon other facts concerning which there is no dispute.

It may be granted that prior to July 1, 1911, neither the grantee of the franchise nor the Bisbee Light & Power Company, its assignee, had performed the necessary acts to give them a vested right in the franchise. The three-light system could hardly be said to be a substantial compliance with the terms of the ordinance granting the franchise. It was, at most, only a colorable or technical compliance with the terms of the ordinance. Besides, this system was maintained for only a short time, and was not, therefore, a fulfillment of the implied agreement that the service should be continuous. However, no complaint was ever made of the inadequacy of this lighting system; no demand was ever made for its enlargement while it was in operation; nor for its reconstruc-

tion after it was burned; no steps had been taken by the city to declare a forfeiture of the franchise. If the Bisbee Light & Power Company, the immediate predecessor of the appellee, had, prior to any action upon the part of the city to forfeit and cancel the franchise, substantially complied with all the terms of the ordinance granting the same, it would hardly be contended, we think, that notwithstanding such performance, the long and continued nonuser of the franchise prior thereto would in law authorize a forfeiture thereof. A full performance on the part of the Bisbee Light & Power Company would have the effect of wiping out and canceling all of its defaults prior thereto so as to defeat a forfeiture in its hands, and a full performance by the appellee before any action upon the part of the grantor of the franchise would likewise insure it against forfeiture. The appellee purchased the franchise on the first day of July, 1911, and immediately was in a position to perform all of the conditions of the ordinance under which the franchise was granted. It had at the time an electric light and power plant in operation in the city of Bisbee, and, before any action was taken upon the part of the appellant to revoke and declare forfeited the franchise, it had taken steps to comply with its requirements and conditions in furnishing of free renewal lamps to its patrons; to the city 225 kilowatt hours per month free for lighting its public buildings, and street lights at ten cents per kilowatt hour. That it measured up in capacity and in disposition to every requirement of the ordinance is not questioned, but agreed to. The statement of facts is silent as to whether the appellee prior to the purchase of this franchise was operating under any franchise at all or not. So far as we know from the record, the franchise in dispute is the only one the appellee is operating under or ever operated under; that it could have constructed its plant and operated it before the acquisition of this franchise under a mere license from the city authorities, while not probable, is entirely within possibilities. It is enough to say that the record does not affirmatively show that the appellee ever had at any time or that it now has any other franchise than this one.

The situation then is that the appellee purchased the franchise for a valuable consideration, and before the repeal of the ordinance under which the franchise was granted tendered

full performance. There is no complaint of the ability of the appellee to furnish electric lighting to all consumers and to the city, nor of the kind or character of service that it offered; the sole objection apparently to its taking over the franchise being a personal one to the appellee. Of course, if the appellee had purchased the franchise and simply held it as its predecessors had done, manifesting no purpose or intention to comply with its terms and conditions, the complaint of the city would present an entirely different question; but the appellee was diligent and active, upon the acquirement of the privileges of the franchise, in the discharge of the duties and obligations that it imposed; it was doing and offering to do all that the original grantee had agreed to do or might be required to do. The appellant had granted this franchise and made it assignable. With the full knowledge of its history and all the things done under it, it failed to question its validity as a binding contract until its ownership had changed to the appellee. If the appellant had taken steps to forfeit the franchise while it belonged to the grantee or the Bisbee Light & Power Company, and the appellee had purchased with notice, then unquestionably it would occupy the same shoes as its predecessors; but, as we have seen, the city remained silent, doing nothing and saying nothing to indicate its purpose to forfeit the franchise until after the appellee acquired it.

It must be borne in mind that forfeitures are not looked upon with favor. The courts will not enforce them unless there be very strong and cogent reasons requiring it. Dillon on Municipal Corporations, fifth edition, section 1311, in discussing public utility franchises, says:

"But a forfeiture will not be enforced, or the contract canceled and annulled where the failure to comply with its terms has been accidental or occasional, and reasonable cause can be shown for excusing the same, but only when it appears that, persistently and in opposition to the will of the people, there has been a continued purpose on the part of the grantee not to comply with the contract, justifying the city in accepting the grantee's attitude as a deliberate intention to violate the contract. And, if it should appear that the grantee of the franchise may be able to comply with the contract in the

future and furnish water in accordance therewith if given reasonable time, the decree of the court may, in furtherance of justice, provide that the contract will be annulled and the franchise canceled only at a time certain, within which the grantee should be given the privilege of complying with the contract. The law does not look with favor on forfeiture, and, if another remedy is available by which the city can obtain just redress, an annulment of the contract will not be decreed.''

No owner, however, of this franchise has ''persistently in opposition to the will of the people'' shown a purpose not to comply with the contract. There is nothing to indicate that the residents of Bisbee and the city of Bisbee itself have not at all times since the twenty-eighth day of December, 1906, been supplied with all the electricity demanded or needed. No complaint is made that anyone has suffered any injury or inconvenience by reason of the nonuser of the franchise prior to its acquisition by the appellee.

It is strenuously contended by the appellant that the acts performed by the grantee of the franchise and the Bisbee Light & Power Company, its assignee, and by the appellee, all combined do not constitute a consideration for the franchise granted; that, as a matter of fact, the appellee only acquired the franchise by its purchase, and that this franchise at the time was a mere license, for the reason that none of the owners of it had theretofore done anything under it, or at least enough, to ripen it into a contract binding upon the appellant.

Disregarding the three-light system, which it is stipulated was a technical compliance with the ordinance granting the franchise, and giving the facts the construction contended for by appellant, the franchise when purchased by the appellee had not been forfeited, nor had any steps been taken to forfeit it; it was then, as it had been from the beginning, a standing offer to the International Gas & Light Company, its successors and assigns, of a franchise to construct an electric light and power plant in the city of Bisbee. The appellee purchased this franchise, accepted the tendered contract, and, within thirty days thereafter, and before the ordinance granting the franchise was attempted to be repealed, performed

or tendered performance of all the terms and conditions of the franchise. It was not thereafter "a mere nude pact, a bare promise to allow a certain thing to be done." *Pearsall* v. *Great Northern Ry. Co.*, 161 U. S. 646, 40 L. Ed. 838, 16 Sup. Ct. Rep. 705. It became an inviolable executed contract, in which the city had secured to itself and its inhabitants the full consideration contracted for.

It seems to us that it is but equitable and fair that the appellee be permitted to exercise the rights and privileges conferred by reason of this franchise; it clearly appearing that the city of Bisbee and its inhabitants were at the time of the institution of this suit and for some five months prior thereto being supplied and furnished with all the electric lighting demanded and required, and it appearing that the appellee purchased said franchise for a valuable consideration and with all diligence and in good faith entered upon the performance of the conditions of said franchise. We are influenced to this conclusion for the reason that it is not shown by the statement of facts that the appellant has been or can be in any way harmed or injured if the franchise is sustained; whereas, if it should be declared forfeited, it does appear that the appellee will sustain injury and loss.

Judgment affirmed.

FRANKLIN, J., concurs.

CUNNINGHAM, J (Dissenting).—The statement of the facts constituting the record in paragraph 2 sets forth the following:

"Defendant Bisbee Improvement Company . . . at all said time has been, and now is, a public service corporation lawfully doing business in said city; that the defendant W. H. Brophy is a resident. . . . Prior to December 28, 1906, and continuously thereafter, it has been lawfully engaged in furnishing electric light and power to the residents of the city and of its adjacent suburbs and settlements, owning and operating the only electric light and power system in the city, excepting that installed by the Bisbee Light & Power Company, . . . " one of the successors to the grant herein involved.

The source of the appellee's lawful authority to render the public service mentioned, and the authority under which it

was engaged in that occupation prior to December 28, 1906, and since, is not involved in this case. The inference of fact and the presumption of law that may be reasonably drawn from the expressions "lawfully doing business" and "lawfully engaged in furnishing electric light and power," the matter of the appellee's rights and privileges to do so not being in question, is that such rights and privileges were conferred by lawful authority, and therefore their exercise is rightful. For this reason I do not concur in the following language used in the majority opinion, to wit:

"The statement of facts is silent as to whether the appellee prior to the purchase of this franchise was operating under any franchise at all or not. So far as we know from the record, the franchise in dispute is the only one the appellee is operating under. . . . "

Such is not in accord with my view and understanding of the language used in the statement of facts quoted above. It must be borne in mind that the power of the municipalities to grant to any person, association of persons, or to corporations, the right and privilege to use the streets, highways and public grounds for the operation of public utility plants, in rendering service and supplying the inhabitants and municipality therewith, is a delegated power, conferred by the legislative department of the state, and the power so delegated to the legislative agency, in this case the common council of the city of Bisbee, can legally be exercised by the agency named in the manner and to the extent authorized. In this case the power to grant the rights and privileges mentioned was conferred upon the common council by chapter 81 of the Laws of 1903, and exercised by the common council in the manner prescribed by said statute and as amended by chapter 4 of the Laws of 1905. The power to grant was invoked by the person, association or corporation "desiring to obtain a franchise for any public utility from any municipality" when it "shall present the franchise desired to the common council, . . . and it shall be the duty of such common council to cause the same to be filed among its records, and if said common council shall deem the granting of such franchise beneficial for such municipal corporation, they shall pass a resolution . . . stating that fact. . . . " Section 2, c. 81, Laws of 1903. "When any franchise referred to in Act No.

81, of the Statutes of Arizona, Session Laws of 1903, is desired to be obtained, by any private person, . . . it shall be lawful for the common council to submit the question as to whether said franchise shall be granted or not to the qualified voters of such municipal corporation at a special election duly and legally called for that purpose. Said proposed franchise shall be published as provided in the case where said franchise is submitted to said voters at a regular election" (thereby referring to section 2, c. 81, Laws of 1903, so requiring publication). Chapter 4, Laws of 1905. "And if a majority of the votes cast at such election shall be in favor of granting such franchise, the common council, after such result is determined, may grant such franchise in said form filed and published, and none other, but no franchise shall be granted for a longer term than twenty-five years." Section 2, c. 81, Laws of 1903.

The proposed franchise must be prepared by and presented by the person desiring the franchise in the form desired. The common council is left no alternative save to file it among its records. When it has been filed, the common council is given the right to act upon it; as in their sound judgment they may determine whether the granting of the franchise so presented and filed is beneficial for such municipal corporation. The exercise of the franchise desired must be deemed beneficial to such corporation before the common council is justified in executing the power delegated to them.

At the time the International Gas & Light Company, the corporation desiring this franchise, presented it and applied for the grant, the appellee, Bisbee Improvement Company, according to paragraph 2 of the statement of facts constituting the record above quoted, was lawfully engaged in furnishing electric light and power to the residents of the city and its adjacent suburbs and settlements, "owning and operating the only electric light and power system in the city. . . ." Hence no necessity existed for another like plant to furnish the residents of the city with such utilities.

The document presented and filed as the franchise desired, and duly granted as such in the form presented, filed and published, and approved by the voters, contained in section 6 the following:

"The maximum amount to be charged by the grantee of this franchise for furnishing electricity to the residents of the city of Bisbee is hereby fixed at the sum of twenty (20) cents per kilowatt hour, and it is further provided that the grantee hereof shall furnish free lamp renewals to all consumers paying regular lighting rates.   The grantee hereof shall furnish to the city of Bisbee free of charge two hundred and twenty-five (225) kilowatt hours per month for lighting the city hall, and other city buildings, and shall furnish street lighting to the said city of Bisbee at the rate of ten (10) cents per kilowatt hour."

Whether the Bisbee Improvement Company furnished the residents of the city lights and power within the maximum rates, and furnished them renewal lamps as the grantee proposed to furnish them, is a question, perhaps.   The record is clear, however, that "for a long time immediately prior to and at the time of its acquisition of said ordinance" defendant did not charge rates to such residents exceeding the maximum.   What period of time is intended to be referred to by the language last quoted I am unable to determine.   What was intended to be conveyed by the words "for a long time immediately prior to" may be a sufficient period beginning near the time the ordinance was passed and extending to the time the Bisbee Improvement Company purchased the ordinance; but certainly those words cannot be construed as referring to a period of time beginning prior to and including the date on which the ordinance was passed.   The record discloses clearly that prior to the nineteenth day of July, 1911, after the publication of the notice of appellee to commence furnishing free lamp renewals to consumers on its lines, it did then and thereafter furnish such free lamp renewals to five such consumers before August 1, 1911, and proposed furnishing such renewals free to all who were furnished electricity by its lines that applied therefor thereafter.   The same conditions existed as regards the lights for the municipal buildings and for lighting the streets.   Consequently the common council were moved to the conclusion in the circumstance existing when the franchise was presented and filed that the granting of such franchise, by which the residents of the city would be furnished electricity for lights and power at a rate not more than twenty cents per kilowatt hour, and free renewal lamps,

and that the city would be furnished 225 kilowatt hours per month free of charge for lighting the public buildings, and electricity for lighting the streets at a rate of ten cents per kilowatt hour, was beneficial for such municipal corporation. Upon such offered benefits the common council acted. Doubtless the further offer of the franchise applicant to complete the system within eighteen months from and after the franchise was awarded was an additional motive to grant the franchise, and certainly a reasonable length of time in which to prepare for the promised service. These promises on the face of the ordinance and the presumption arising that the service when commenced would be continuous during the life of the franchise are the considerations, and sole considerations, for the grant. If the ordinance is in form a contract, and it certainly is such in form, just as certainly it is an executory contract, until the conditions upon which it was entered into are performed. The performance of the conditions specified in the contract are necessary to the validity of the contract and precedent to the fixing of the obligation on the city. I see no reason to cite authorities in support of these well-settled rules governing contracts.

The parties concede that the original grantee of the franchise and its successors or assigns have installed no system at all. The appellee, after purchasing the ordinance, offered and tendered performance of the said promises to the residents of Bisbee, and offered and tendered performance of the promises to the municipality. Such tenders and offers to the municipal corporation were promptly refused and rejected, and by process of bookkeeping appellee has shown an account on its private books that the city has been charged and credited with 225 kilowatt hours per month for lighting the public buildings, and has charged ten cents per kilowatt hour for electricity furnished for lighting the streets. And since August 1, 1911, and not before, these accounts the city has persistently and consistently refused to recognize, and, on the other hand, has regularly repealed the ordinance containing the franchise. The question presented in this record is whether the ordinance granting the rights and privileges to use the streets and highways, public grounds, and the property of the city on condition that the grantee will do the things promised under the statute authorizing the grant became an irrevocable grant of

franchise and vested an estate in the grantee upon the passage
of the ordinance, or whether the grant so made on conditions
remained a license until the conditions were performed. In
other words, when does the right of easement referred to
vest, on the passage of the ordinance, or on the performance
of the conditions? These questions must receive an answer
from the statute granting the right—delegating the authority
—to the common council to prescribe the conditions and grant
the privileges and rights subject thereto. These questions
are answered by the following authorities:

3 Dillon on Municipal Corporations, section 1311, page 2176,
says:

"Every grant of a franchise in the legal sense of the word,
whether corporate or otherwise, is made subject to the con-
dition that the privileges and franchises conferred shall not be
abused or so employed as to defeat the purpose of the grant,
and that, when abused or misemployed, they may be with-
drawn or resumed in such way and by such modes of proce-
dure, either at law or in equity, as are consistent with estab-
lished legal principles. Although no such condition may be
expressed in the charter or grant of the franchise, it is neces-
sarily implied as an incident thereto."

In the same section, on page 2179, it is said:

"When a contract, such as a contract for a supply of water,
is made as an incident to a franchise to use the city streets, the
ability of the company to continue to furnish water accord-
ing to the terms of the contract is a condition precedent to the
continuance of the right of the company to use the streets of
the city and to furnish water during the life of the franchise;
and, when after a reasonable time the water company has
failed to comply with the condition as to the quality and quan-
tity of water, the city has a right to treat the contract as
terminated and to invoke the aid of a court of equity to en-
force its rescission. A suit for specific performance of the
contract or a suit to recover damages for its nonperformance
would be wholly inadequate remedy in such a case."

Bearing out this view, the author cites *Farmers' Loan & Tr.
Co.* v. *Galesburg*, 133 U. S. 156, 33 L. Ed. 573, 10 Sup. Ct.
Rep. 316, and many other cases of unquestioned authority.

The facts here presented are that the grantee, its successors
and assigns, have never at any time in the past, nor do they

now, propose to exercise the franchise, the subject matter of the grant made by Ordinance No. 102; but the present successor, now claiming the franchise granted, while not proposing to use the rights and privileges thereby granted, does propose to specifically enforce the contract obligations contained in the ordinance as incidental thereto and effective only upon the exercise of the rights and privileges granted by the ordinance.

I am of the opinion that the completion of an electric system within the limit of time specified in the ordinance, viz., within eighteen months from and after its passage, was a condition precedent to the vesting of the easement contemplated therein; that exercise of the franchise as contemplated is a condition precedent to the obligation to accept or pay for electricity furnished, as contemplated by the terms of the ordinance as incidents thereto; that the primary object and purpose of the grant was to provide a sufficient plant to supply the present needs of the residents and city of Bisbee, and the principal, if not the entire, inducement and consideration for the grant of the franchise was the promise of the grantee in its own behalf, and in behalf of its successors and assigns, to complete a sufficient plant for the purpose, and continuously furnish electricity to the residents of Bisbee, and to the city of Bisbee, from the time the plant was ready for operation, not later than eighteen months after the grant was awarded, during the life of the grant, according to the conditions therein prescribed.

Is it reasonable, just or equitable that the streets and public buildings of the city of Bisbee should remain in darkness for more than five years awaiting an opportunity for the grantee of a valuable, salable franchise to earn the money to complete the plant, or sell the franchise to some purchaser who is ready, able and willing to complete it, and still during that waiting period of time be held to its contract obligation to receive and pay for the lighting when such purchaser is found and the facilities for performance of the conditions are provided, and not be heard in a court of equity to complain of such delay and failure? And yet, in order to have the benefits of lights in the meantime, it must procure the lights from another source while waiting the pleasure of the grantee to fulfill its promises? I am unable to see the shadow of equity

falling on and protecting the grantee of the franchise, its successors and assigns, in such circumstances. The judgment of the trial court to the effect that the city take nothing by its action means that the above facts present no grounds, legal or equitable, for relief to the city from its obligations and burdens to pay for the electricity furnished by the appellee for its use in accordance with the contract evidenced in the Ordinance No. 102 at any time if the grantee of the franchise and party to the contract offers at any future time to commence performance. Yet appellee was in existence and operating a suitable system at the time, and the construction of another system was not necessary to empower the city to contract for service. The judgment has the effect of establishing the binding force and perpetuating the contract relation of the parties, not as of the date fixed by the terms of the contract for the performance of conditions expressed in the same, but as of the date of the grant, the passage of the ordinance, and no restrictions are placed on the grantee of the franchise, and such grantee is permitted to delay performance until it is ready, able and willing to commence performance of conditions precedent, and, when such grantee tenders performance at any future time, the city is bound to accept the tender. Under the facts in this case, such tender was delayed more than five years after the duty to commence a continued performance arose. Can chapter 81 of the Laws of 1903 be construed to permit such delay and hear no complaint? The majority of this court sustains the judgment of the lower court, upon the grounds that:

"The appellee purchased this franchise, accepted the tendered contract, and within thirty days thereafter, and before the ordinance granting the franchise was attempted to be repealed, performed or tendered performance of all of the terms and conditions of the franchise. It was not thereafter 'a mere nude pact; a bare promise to allow a certain thing to be done.' *Pearsall* v. *Great Northern Ry. Co.*, 161 U. S. 646, 40 L. Ed. 838, 16 Sup. Ct. Rep. 705. It became an inviolable executed contract, in which the city had secured to itself and its inhabitants the full consideration contracted for."

After five years' delay might be added from the facts. This recognizes no right vested until the conditions are performed, and gives too much force to the repealing ordinance.

In the Pearsall case, *supra,* the Supreme Court of the United States, says:

"The contract protected by this clause must also be founded upon a good consideration. If it be a mere nude pact, a bare promise to allow a certain thing to be done, it will be construed as a revocable license"—referring to *Christ Church* v. *Philadelphia County,* 65 U. S. (24 How.) 300, 16 L. Ed. 602, for illustration, stating that:

"It was held that the original concession of the legislature exempting the property from taxation was spontaneous, and no service or duty or other remunerative consideration was imposed upon the corporation, and hence that it was in the nature of a privilege or license, which might be revoked at the pleasure of the sovereign."

That is a very different case from this, yet clearly recognizes the rule, I contend. Here a duty and a service was imposed upon the grantee as a condition precedent to the vesting of the rights and privileges offered, and the grantee utterly failed, and still fails to perform the duty imposed, and for five years failed to offer to render the service prescribed. This action is for the purpose of enforcing a rescission of the offered contract, because of the failure of consideration, not because there was an absence of any consideration. Were the rights and privileges so conditionally granted, in the absence of performance of the condition, to be considered a mere license or the creation of a contract obligation, vesting the rights and privileges irrevocably?

"It is generally held that an ordinance granting the right to use streets may be revoked before it has been accepted. However, the right to revoke has been extended by some recent decisions by holding, as was done by the court of appeals of New York, that the mere granting of a permit by a municipality to a corporation to use the streets is a license merely, revocable at the pleasure of the city, unless it has been accepted and some substantial part of the work performed contemplated by the permission sufficient to create a right of property, and thus form a consideration for the contract; and this holding is supported by a decision of the supreme court of the United States." 4 McQuillin on Municipal Corporations, § 1661, pp. 3499, 3500, citing *Re New York Electric Lines Co.,* 201 N. Y. 321, 94 N. E. 1056, affirm-

ing 140 App. Div. 934, 125 N. Y. Supp. 1133, as the New
York authority referred to, and *Capital City Light & Fuel
Co.* v. *Tallahassee,* 186 U. S. 401, 411, 46 L. Ed. 1219, 22 Sup.
Ct. Rep 866, 870.

Mr. Justice HAIGHT said, speaking for the court of
appeals:

"Should a public service corporation be permitted to ac-
quire an irrevocable franchise by mere acceptance without
spending a dollar by way of performance, and then hold up
the public in its enjoyment of the privileges contemplated
by the grant indefinitely, or until they can be bartered away
for a fortune. Should the municipalities to whom the legis-
lature has delegated the right to grant permits for the use
of their streets for public service purposes be denied the
power to revoke licenses granted in case of failure of the
grantees to render substantial performance? We think not.,
No reasons for the deprival of the municipalities of such
power are suggested, and none are apparent to our minds."

Mr. Justice PECKHAM, speaking for the supreme court
of the United States, said (186 U. S. 411, 46 L. Ed. 1219, 22
Sup. Ct. Rep. 870):

"Such grant does not become a contract or a vested right
so as to be protected by the Constitution of the state or the
United States, until the company has, to say the least, begun
to do the thing required by the charter as a consideration for
the grant of such privilege."

In *Farmers' Loan & Trust Co.* v. *Galesburg,* 133 U. S. 156,
33 L. Ed. 573, 10 Sup. Ct. Rep. 316, the supreme court of the
United States ruled, where a water company failed to comply
with its contract in that the water was not in compliance with
the franchise contract either as to amount or quality, but
had constructed a plant at great expense, it was held that
the municipality had a right to treat the contract as termin-
ated, and could sue in equity to enforce its rescission and
cancel the franchise. This is the exact course followed by
the city of Bisbee, and the principle, under the facts in that
case, ought to be applied to this case. Until the grantee of
the franchise, its successors or assigns, have substantially
performed the conditions precedent, the rights and privileges
granted are mere revocable licenses, and vest no property

rights. But the majority of this court in the opinion of the court says:

"It seems to us that it is but equitable and fair that the appellee be permitted to exercise the rights and privileges conferred by reason of this franchise, it clearly appearing that the city of Bisbee and its inhabitants were at the time of the institution of this suit, and for some five months prior thereto, being supplied and furnished with all the electric lighting demanded and required, and it appearing that the appellee purchased said franchise for a valuable consideration and with all diligence, and in good faith entered upon the performance of the conditions of said franchise. We are influenced to this conclusion for the reason that it is not shown by the statement of facts that the appellant has been or can be in any way harmed or injured if the franchise is sustained; whereas, if it should be declared forfeited, it does appear that the appellee will sustain injury and loss."

To me it seems clear from the statement of facts that the city of Bisbee and its residents were forced to go elsewhere than to the grantee of the franchise for a lighting service for about five years after the time fixed in the ordinance for the commencement of the said grantee to serve the lights. I am not ready to judicially know that such failure and delay did not result in injury to the city and its residents; the city claims an injury resulting. It is usually considered some injury, at least it is a burden, to a party to a contract to wait an unreasonably long period of time for the other party to the contract to commence the performance of the conditions precedent contained in the terms of the contract.

The majority of the court in the above opinion places upon the city the burden of demanding performance of a contract duty, by the other party to the contract, or suffer a penalty of laches on its part for failure to make demand, when the plain contract duty is violated, and this is considered equitable and fair.

If the city and its residents had convenient another source from which it and they could procure lights, that source existed at the time the franchise was applied for and granted, according to this record. Why did the common council deem it to the benefit of the city to grant the franchise? Because the existing source of lighting was not considered of equal

benefit with the proposed arrangement under the proposed franchise.   This is the only logical answer.

The Galesburg case, 133 U. S., *supra,* is authority for meeting the proposition that appellee acquired additional rights by paying a valuable consideration therefor.   That court said:

"Although the bondholders exercised good faith in purchasing the bonds, they bought them knowing that the city was not a party to them, and that the payment of water rents by the city for the hydrants depended upon a continued compliance by the water company with the terms of the contract."

Here the appellee knew the history of the ordinance and was charged with knowledge of what had been done by its predecessors in interest, and therefore knew that the predecessors in interest had wholly failed to perform all the conditions precedent to the vesting of any property right in them.   The appellee took no better title than its grantor had to convey.   It took the mere revocable license right.   No innocent purchaser without notice for valuable consideration rule applies.   The franchise was assignable and transferable, but not negotiable as a note, and, when transferred to an innocent holder without notice for a valuable consideration, did not have the effect of cutting off all defenses.   The record is conclusive that the city refused and continued to refuse the offer and tender of the appellee to furnish electricity in accordance with the franchise obligation.   The rule of estoppel indicated could not apply to the city, and the effect of the equitable decree indicated is to validate the contract, and place the city in default by its refusal to accept the offered performance of the conditions of the contract after a willful neglect, or at least an unexplained, and therefore inexcusable, delay on the part of appellee's predecessors.

How can the appellee be injured, other than by the loss of the money or valuable consideration it paid for the franchise through its ignorance of law by the annulling decree? It asserts no intention; makes no offer to use the franchise it purchased.   Its only claim of right is to furnish electricity at the rates and under the conditions which the original grantee promised to do, in consideration of a grant to use

XVIII Ariz.—10

the streets and public grounds for the operation of an electric light system. It could have made that offer before the franchise here involved was granted and at any time thereafter. The appellee had at that time, and still has, a sufficient electric system in operation. Consequently it must have had, and still has, the use of the streets for the operation of its plant.

I do not wish to be understood as holding to the opinion that the repealing ordinance had any legal effect, other than an *ex parte* notice on the part of the city of its purpose to treat the contract relation created by Ordinance No. 102 as terminated by the grantee. The provisions of the ordinance that the system should be constructed and ready for operation within eighteen months from and after the franchise was awarded, and the promise of the grantee that it, its successors and assigns, would furnish electric light and power to the residents of the city at rates not exceeding twenty cents per kilowatt hour and furnish renewal lamps, and furnish to the city free of charge 225 kilowatt hours per month, and furnish sufficient lighting for the streets of the city of Bisbee at ten cents per kilowatt hour, were clearly provisions designed to protect the municipality and its inhabitants, and they are clearly mandatory provisions in their very nature and provisions within the contemplation of chapter 81 of the Laws of 1903, under authority of same, and under authority of subdivision 8, paragraph 545 of the Revised Statutes of Arizona of 1901, authorizing the grant and making of the contract.

McQuillin on Municipal Corporations, volume 3, page 2566, says:

"Obviously the courts should unhesitatingly enforce compliance with all mandatory legal provisions designed to protect the municipal corporation and its inhabitants, and thus permit the will of the law, and not their own will, to prevail. What appears to be judicial legislation is sometimes invoked in the construction of laws, however, only for the purpose of ascertaining and giving effect to the legislative intent—in a word, to the will of the law. It should never be utilized to supplant a clear positive legal mandate with what may be conceived to be the demand of justice in the given case. Such action is inconsistent with our whole theory of government,

law and jurisprudence, since it, to the extent indulged, substitutes a government of laws by a government of men.''

In *Osborn* v. *Bank of the United States*, 9 Wheat. 738, 866, 6 L. Ed. 204, Chief Justice MARSHALL said, speaking of the power of the judicial department:

''That department has no will in any case. . . . Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature, or, in other words, to the will of the law.''

The judgment of the lower court has the effect of adjudging the performance by the grantee of the franchise of its promises made as conditions precedent to the vesting of the easement as unimportant. It holds, in effect, that the estate vested upon future tender of performance; that an offer to perform made at any future time during the life of the proposed franchise vested the easement; that pending the offer and tender the city had the right to commence active proceedings to rescind, and it was its duty to take such action, and no action taken with that object in view is equivalent to acquiescence by the city in the delay, and its failure to act affirmatively to annul the relation arising from the passage of the ordinance works an estoppel to act, and cuts off its rights upon a tender of performance. By such judgment the Bisbee Improvement Company is permitted to carry out the promises made by the International Gas & Light Company, made in consideration that it be granted the right and privilege to use the city streets in the operation of an electric system. The system was never in existence for operation, and the streets have never been used for the purpose for which the grant was made; yet the city must specifically perform its part of the contract by accepting the electric lighting from another system, one in existence at the time of making the grant, but one which would have refused to render the service on the same terms. The effect is to confer

upon the appellee all of the rights and privileges of a franchise, as well as the benefits of contracts made, upon the conditions of a grant of another and different franchise.

I see no effect other than a judicial creation of a franchise and grant to the Bisbee Improvement Company by the trial court's judgment. That judgment is affirmed by the decision of the majority of this court, for the reasons stated in its opinion. The reasons given are not convincing to me, nor is the decision reached therefrom agreeable with my understanding of the rule of law applicable to the facts presented. It is my clear opinion, from the authorities, that the rights and privileges granted and authorized to be granted under the statutes have never arisen to the dignity of vested property rights, but were and now are mere licenses. The city had the right to revoke such licenses, and by repealing the ordinance gave notice of the manner in which it intended to treat the contract, and did, in fact, do everything in its power to do as revoking the license, at the time of the repeal, and rescinding of the contracts contained in the ordinance and incidental to the grant. Therefore it was the duty of the trial court under the law and the facts to so decree, and enforce a rescission of all contract obligations of the city, and relieve the city from the burdens conditionally assumed.

For these reasons, I dissent from the reasons given by the majority of this court and from the decision rendered thereon affirming the judgment.

I am of the opinion that the judgment should be reversed and the proper judgment rendered.