## S94G0418. ATHENS-CLARKE COUNTY v. WALTON ELECTRIC MEMBERSHIP CORPORATION.

(454 SE2d 510)

BENHAM, Presiding Justice.

Pursuant to the provisions of Art. IX, Sec. III, Par. II (a) of the 1983 Georgia Constitution, the Unified Government of Athens-Clarke County came into being in 1991 after its charter was created by the General Assembly (Ga. L. 1990, p. 3560), and ratified by citizen referendum. The unified government's charter proclaimed that the unified government "shall be deemed to be both a municipal corporation and a county throughout the total territory of said government" and that it was expressly intended that all of the area of Clarke County, except the cities of Winterville and Bogart, be declared a city. The charter vested the unified government with all the rights, privileges, powers, duties and authority enjoyed by the county commission and the city mayor and council at the time the charter was adopted. Included in a non-exhaustive list of powers of the unified government was the power "to grant franchises or make contracts for public utilities and to prescribe the conditions of such franchises and contracts," as well as the power to grant franchises and rights of way on roadways.

When the unified government contacted the Walton EMC, which operated on the rights-of-way of the formerly unincorporated areas of Clarke County, to negotiate franchises for such use, the EMC refused to negotiate or to acknowledge the unified government's right to enter into franchise agreements with utilities. As a result, the unified government filed an action seeking a declaratory judgment regarding whether the unified government was authorized to charge and collect a franchise fee from the EMC which provided electric service to that portion of the unified government's geographic area that had previously been unincorporated Clarke County. The trial court found the portion of the unified government's charter concerning its status to be ambiguous, struck the ambiguous portion and, citing *Troup County EMC v. Ga. Power Co.*, 229 Ga. 348 (191 SE2d 33) (1972), concluded that a new governmental entity had been created which did not have the authority to collect fees from the EMC. While the Court of Appeals did not agree with the trial court's assessment of the status of the unified government, it concluded that the unified government was not a "municipality" that was authorized to charge a franchise fee under the Georgia Electric Service Territorial Act ("the Act"), OCGA § 46-3-1 et seq.[1] *Athens-Clarke County v. Walton EMC*, 211 Ga.

[1] Through the Act, the State implemented a plan whereby every geographic area within the State was either assigned to an electric supplier or declared unassigned. OCGA § 46-3-2. The General Assembly so acted with the avowed purposes of assuring the most efficient, economical, and orderly rendering of retail electric service in the state; to inhibit duplication

App. 232 (439 SE2d 504) (1993). We granted the unified government's petition for certiorari.

1. The initial question we posed in granting certiorari was whether the unified government was a "municipality" under the Act. The Act defines "municipality," in relevant part, as:

(A) Any geographically defined political subdivision of this state, other than a county, performing or authorized to perform multiple and substantial municipal functions, specifically including either the function of furnishing retail electric service or the function of granting to electric suppliers street franchise rights for use in furnishing retail electric service. . . .

OCGA § 46-3-3 (5) (A). The unified government is a geographically defined political subdivision of the state performing or authorized to perform multiple and substantial municipal functions. Therefore, so long as it is "other than a county," it is a "municipality" under the Act.

We agree with the trial court's and the Court of Appeals' observation that the unified government is "a new political entity which is a hybrid of Clarke County and Athens." It is an example of the political entity that emerges from the constitutionally-sanctioned consolidation of municipal and county governmental and corporate powers and functions. 1983 Ga. Const., Art. IX, Sec. III, Par. II (a). The charter's express declaration of the intent that the unified government be a city distinguishes it from the charter which consolidated the governments of Columbus and Muscogee County and which "studiously avoid[ed]" designating the new political entity created as a city, town or village. See *Troup County EMC v. Ga. Power Co.*, supra, 229 Ga. 348 (6). While Clarke County continues to exist as a political subdivision of the state (id. Division 3), the county's continued existence does not mean that the new hybrid form of government is a county. By incorporating the governmental and corporate powers of the city and county, the charter has created a hybrid unified government. Because the new political entity is something other than a county, it falls within the Act's definition of "municipality."

2. The second question we asked in granting certiorari was whether the unified government was authorized to assess franchise fees against the EMC.

A municipality has statutory authority to grant franchises to public utilities for the use and occupancy of the city streets in order

of electric supply lines; to foster extension and location of lines compatible with the environment; and to protect and conserve lines lawfully constructed by electric suppliers. Id.

to provide utility services and to make contracts with those utilities upon such conditions as the governing authority of the municipality deem wise, subject to the Constitution and the general laws of this state. OCGA § 36-34-2 (7); *City of Calhoun v. N. Ga. EMC*, 264 Ga. 205 (1) (443 SE2d 469) (1994). The unified government meets the statutory criteria of an "active municipality." See OCGA § 36-30-7.1. More particularly, the Act recognizes the right of a municipality, as that term is defined in the Act, to grant a franchise to an electric supplier. OCGA § 46-3-14 (b). Implicit in that right is the municipality's authority to condition the grant of the franchise upon requirements the municipality deems wise. OCGA § 36-34-2 (7). Payment of a franchise fee is a plausible prerequisite to the grant of a franchise. See *City of Calhoun v. N. Ga. EMC*, supra. While the EMC reads the second and third sentences of OCGA § 46-3-14 (b) as a limitation on a municipality's ability to charge a franchise fee, we do not. Rather, the sentences set forth the method certain municipalities are required to use to calculate the franchise fees to be charged non-primary electric suppliers and those who supply electricity to less than a majority or plurality of the electric meters in a wholly new municipality. OCGA § 46-3-14 (b) does not forbid a municipality exercising its right to condition the grant of a franchise from charging franchise fees to electric suppliers. See OCGA § 46-3-14 (c). We therefore conclude that the unified government is authorized pursuant to OCGA § 46-3-14 (b) to assess franchise fees against the EMC.

The Court of Appeals opined that the unified government's authority under its charter to grant franchises and to prescribe conditions therefor conflicts with OCGA § 46-3-201 (b) (10), a provision of the general law contained in the Georgia Electric Membership Corporation Act. *Athens-Clarke County v. Walton EMC*, supra, 211 Ga. App. at 235. We disagree. The statute authorizes EMCs to use a municipality's streets and rights of way, but that authority is "subject to reasonable terms and conditions as determined by the municipality." *City of Calhoun v. N. Ga. EMC*, supra, 264 Ga. at 210, n. 2 (Fletcher, J., concurring). We held in *City of Calhoun* that a municipality could condition the grant of a street franchise upon the EMC's payment of a reasonable franchise fee (id. at 206) and we held in Division 1 of this opinion that the unified government is a municipality under the Act. Therefore, there is no conflict between the charter and the statute.

3. The third question we posed in granting certiorari was whether an agreement between the unified government and the EMC was necessary in order for the unified government to collect a franchise fee from the EMC. Adoption of "an ordinance conditioning the future grant of the requisite street franchise upon [the EMC's] payment of a reasonable franchise fee" will obligate the EMC

to accept the grant of a street franchise on that condition if it intends to continue to use and occupy the [unified government's] streets for the purpose of providing electricity to its customers who live [within the boundaries of the unified government].

*City of Calhoun v. N. Ga. EMC*, supra, 264 Ga. at 210.

Upon the adoption of such an ordinance, [the EMC's] continued use and occupancy of the [unified government's] street for said purpose [of providing electricity to its customers who live within the boundaries of the unified government] will render [the EMC] liable for the payment of such fees and entitle the [unified government] to enforce compliance with such ordinance by an appropriate proceeding at law or in equity. Id.

That being so, the holding of the Court of Appeals that an agreement would be necessary is incorrect.

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 13, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995.

*Ellen L. Whitaker, Denny C. Galis,* for appellant.
*Sutherland, Asbill & Brennan, James A. Orr, Lambert & Roffman, E. R. Lambert,* for appellee.