937 P.2d 696

**SOUTHWEST GAS CORPORATION,
Plaintiff–Appellee,**

v.

**MOHAVE COUNTY; Mohave County Board of Supervisors; Pat Holt, Sam Standerfer and Joan C. Ward, in their capacities as Members of the Mohave County Board of Supervisors, Defendants–Appellants.**

No. 1 CA–CV 96–0347.

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 6, 1997.

Review Granted June 5, 1997.

Wachtel, Biehn & Malm by James B. Wyss, Lake Havasu City, and Southwest Gas Corporation by Andrew W. Bettwy, Las Vegas, NV, for Plaintiff–Appellee.

William J. Ekstrom, Jr., Mohave County Attorney by Lance B. Payette, Deputy County Attorney, Kingman, for Defendants–Appellants.

## OPINION

KLEINSCHMIDT, Judge.

■ The question in this case is whether a county has the authority to charge a public utility a fee as a condition of granting the utility a franchise to place its transmission lines under county roads and highways. We hold that a county does not have the power to charge such a fee because the legislature has not expressly conferred that power on counties, and it is not a power which is necessarily implied from the right to grant a franchise.

## FACTS AND PROCEDURAL HISTORY

Southwest Gas Corporation provides natural gas service to customers in Mohave County. Arizona law requires a utility to obtain a franchise from the county in which it operates before it can construct and maintain its transmission lines. Arizona Revised Statutes Annotated ("A.R.S.") section 40–283 (1996). Southwest originally obtained such a franchise from Mohave County in 1957. Although that franchise specified that Southwest would pay the County a fee equal to two percent of its gross receipts from the operation of the franchise, such payment was never made or demanded.

In 1990, the County claimed the franchise had expired in 1982 under a policy which limits franchises to twenty-five years. Ariz. Const. art. 13, sec. 4. Still later, the County questioned Southwest's authority to continue to use County rights-of-way, in part on the grounds that Southwest had failed to pay the franchise fee. As negotiations proceeded, Southwest questioned the County's authority to charge a fee based on a percentage of profits. The parties finally entered into a new franchise agreement calling for a franchise fee of two percent of gross receipts, conditioned on Southwest's right to challenge the legality of such a fee in court.

Southwest did file a declaratory judgment action challenging the right to charge a revenue-based franchise fee, and ultimately, the trial court granted summary judgment in its favor, finding that "in the absence of a voluntarily-negotiated 'percentage of gross receipts' fee, Mohave County is not empowered by a constitutional or statutory provision to condition the grant of a franchise to Southwest Gas Corporation on the payment of such a fee...." This appeal ensued. By the time the case reached oral argument, Southwest's position had evolved into an argument that the County had no authority to impose any franchise fee whatsoever, no matter how the fee was calculated.[1]

1. Much of the County's opening brief is devoted to defending its right to charge a fee based on a percentage of Southwest's revenue. At oral argument on appeal, counsel for Southwest said that the sole position it is asserting is that the County is not entitled to charge a franchise fee at

## THE RIGHT TO CHARGE A FRANCHISE FEE IS NOT A NECESSARY IMPLICATION OF THE RIGHT TO GRANT A FRANCHISE

■ The case turns on whether A.R.S. section 40–283, the statute which requires public utilities to obtain a franchise, gives the County the authority to charge a franchise fee. The statute provides:

A. Any person engaged in transportation or transmission business within the state may construct and operate lines connecting any points within the state and connect at the state boundary with like lines, except that within the confines of municipal corporations the use and occupancy of streets shall be under rights acquired by franchises.... The use of highways, except state highways, by public utilities not within any incorporated city or town shall be regulated by the board of supervisors of the county by license or franchise.

B. A board of supervisors in granting a license or franchise, or at any time after it is granted, may impose restrictions and limitations upon the use of the public roads as it deems best for the public safety or welfare.

C. Every franchise granted under this article shall include provisions requiring the grantee thereof to bear all expenses, including damage and compensation for any alteration of the direction, surface, grade or alignment of a county road, made for the purpose of such franchise.

■ The statute is silent as to the right to charge a franchise fee. The powers accorded to counties under Arizona law are very limited, generally even more limited than the powers accorded to cities and towns. *Maricopa County v. Black,* 19 Ariz.App. 239, 241, 506 P.2d 279, 281 (1973). It is well established that a county has only those powers that have been expressly, or by *necessary implication* delegated to it by the legislature or the constitution. *Associated Dairy Products Co. v. Page,* 68 Ariz. 393, 395, 206 P.2d 1041, 1043 (1949); *Maricopa County v. Maricopa County Mun. Water Conservation Dist. No. 1,* 171 Ariz. 325, 330, 830 P.2d 846,

851 (App.1991); *Maricopa County v. Black,* 19 Ariz.App. at 241, 506 P.2d at 281.

The question devolves into what is meant by "necessary implication." The only Arizona case we have found that considers the meaning of that term is *Mahoney v. County of Maricopa,* 49 Ariz. 479, 68 P.2d 694 (1937). In *Mahoney,* the supreme court held that a broad statutory scheme which created a welfare board repealed, by necessary implication, other statutes authorizing counties and the governor to dispense welfare funds. *Id.* at 497, 68 P.2d at 702. The court, relying on *Gilbert v. Craddock,* 67 Kan. 346, 72 P. 869 (1903), defined the term as follows:

"A necessary implication means not natural necessity, but so strong a probability of an intention that one contrary to that which is imputed to the party using the language cannot be supposed."

49 Ariz. at 492, 68 P.2d at 700 (quoting *Gilbert,* 72 P. at 871).

The *Gilbert* case, which dealt with the implied repeal of an election statute, discussed the meaning of "necessary implication" in great detail:

To be sure, the implication must be a necessary one. It may be drawn from public policy; past acts; the entire terms, purposes, and scope of the act to be considered; the inconvenience, inconsistencies, and absurdities involved in the contrary consideration; indeed from all the things found in the act, the conditions surrounding it, the purposes to be accomplished by it, and the policy dictating it. An act of the Legislature is like any other writing in this respect. Its purpose is to be gathered from all of its terms. Sutherland, Stat. Con. § 239. A necessary implication does not mean to shut out every other possible or imaginary conclusion, and from which there is no possible escape, but means one leading to such a conclusion as, under the circumstances, a reasonable view impels us to take, the contrary of which would be improbable or absurd. Speaking upon the matter of implications in the consideration of statutes, it is said in Black on

all. We take this as a concession that if Southwest failed on that point, the County would be

entitled to base a franchise fee on Southwest's revenues.

Interpretation of Laws, § 33: " * * * This doctrine does not empower the courts to go to the length of supplying things which were intentionally omitted from the act. But it authorizes them to draw inferences from the general meaning and purpose of the Legislature, and from the necessity of making the act operative and effectual, as to those minor or more specific things which are included in the more broad or general terms of the law, or as to those consequences of the enactment which the Legislature must be understood to have foreseen and intended . . . ." * * * On the same subject, it is said in Sutherland on Statutory Construction, § 336: " * * * A necessary implication means not natural necessity, but so strong a probability of an intention that one contrary to that which is imputed to the party using the language cannot be supposed."

72 P. at 871.

Other cases which construe the term "necessary implication" concern either the construction of statutes or the terms of wills. One of them, *Atlas Acceptance Corp. v. Pratt*, 85 Utah 352, 39 P.2d 710, 714 (1935), discusses the long and consistent history of the meaning of the term. All of the cases give the term the same meaning—so strong a probability of an intention that one contrary to that which is imputed to the party using the language cannot be supposed—that our supreme court used in *Mahoney v. County of Maricopa. See United States v. Jones*, 204 F.2d 745, 754 (7th Cir.1953); *Harris Trust & Sav. Bank v. Donovan*, 203 Ill.App.3d 259, 148 Ill.Dec. 578, 582, 560 N.E.2d 1175, 1179 (1990), *rev'd on other grounds*, 145 Ill.2d 166, 163 Ill.Dec. 854, 582 N.E.2d 120 (1991); *Russell v. Russell*, 16 N.J.Super. 589, 85 A.2d 296, 298 (App.Div.1951); *Hunt v. Furman*, 132 W.Va. 706, 52 S.E.2d 816, 818 (1949); *Palfreyman v. Trueman*, 105 Utah 463, 142 P.2d 677, 679 (1943); *Tuttle v. Woolworth*, 74 N.J. Eq. 310, 77 A. 684, 686 (N.J.Ch.1908); *Hewitt v. Shipley*, 169 Md. 221, 181 A. 345, 347 (1935). One case gives the term an even more restrictive meaning. *See Attorney General ex rel. Gregg v. Sands*, 68 N.H. 54, 44 A. 83, 85 (1894) (necessary implication when construing statute means an implication that is absolutely necessary and unavoidable). We are aware of no case which adopts a less restrictive definition of the term.

The question then, rephrased in the positive, devolves further into whether it is possible to suppose that the legislature intended to give counties the power to grant a franchise without also giving them the power to impose a franchise fee. For several reasons, we think such is entirely possible. First: There is nothing particularly compelling about the idea that the legislature wanted the counties to charge a franchise fee. The legislature may have recognized that franchises are necessary to avoid the chaos that would ensue from competing utilities putting their transmission lines under county roads but at the same time may not have wanted to burden consumers with a cost that the utility could pass on to them.

Second: If the legislature had wanted the counties to be able to charge a fee for the franchise, it would have been a simple matter to include that in the grant of power.

Third: As we said in *Maricopa County v. Black*, the absence of a prohibition does not mean a county has the power to engage in the questioned conduct. 19 Ariz.App. at 241, 506 P.2d at 281. Instead, the burden is on the county to point out the constitutional or statutory power that permits the conduct. *Hancock v. McCarroll*, 232 Ariz.Adv.Rep. 24, 188 Ariz. 492, 937 P.2d 682 (App.1996). In *Black*, we held that the power granted to a county to institute an insurance program for its employees did not, by necessary implication, authorize the county to make the program mandatory. *Id. Black* illustrates that powers are not easily established by necessary implication.

## THE COUNTY'S ARGUMENTS ARE NOT PERSUASIVE

The County relies on a general statement from McQuillin, *Municipal Corporations*, § 34.37 at 130 (3d ed.1995 rev. vol.):

A municipal corporation, having entire control of its streets and the power to impose conditions on granting a franchise to use the streets, may require compensation for their use by public service companies, as a

condition of the grant of the right to use them, unless forbidden by statute, or contrary to public policy.

While this may be the rule in some jurisdictions, we do not believe it applies in Arizona where the powers of counties are narrowly restricted.

The case of *City of Bisbee v. Bisbee Improvement Co.*, 18 Ariz. 126, 157 P. 228 (1916), reflects historical precedent for requiring valuable consideration in exchange for a franchise. In discussing an unrelated point of law, the report of the decision in *City of Bisbee* reveals that in return for a franchise to provide electric service to the residents of the city, the electric company provided free electricity for city-owned facilities. *Bisbee*, 18 Ariz. at 131, 157 P. at 231. In *City of Bisbee*, however, the right to charge a franchise fee was not the issue for decision.

The County's citation to the decision in *Athens–Clarke County v. Walton Electric Membership Corp.*, 265 Ga. 229, 454 S.E.2d 510 (1995), in which the Supreme Court of Georgia held that a municipality had the implied power to charge a franchise fee is not compelling. The relevant statute in that case permitted municipalities "[t]he power to grant franchises to or make contracts with . . . public utilities . . . upon such conditions . . . as the governing authority of the municipal corporation may deem wise." Ga.Code Ann. § 36–34–2(7) (Supp.1996). In upholding the right to charge a fee the court said:

> More particularly, the Act recognizes the right of a municipality, as that term is defined in the Act, to grant a franchise to an electric supplier. Implicit in that right is the municipality's authority to condition the grant of the franchise upon requirements the municipality deems wise. Payment of a franchise fee is a plausible prerequisite to the grant of a franchise.

454 S.E.2d at 512 (citations omitted).

For several reasons, *Athens–Clarke County* is not as persuasive as it might be. A "plausible prerequisite" is simply not the same thing as something that is "necessarily implied." Moreover, *Athens–Clarke County* describes the right to charge a fee as merely "implicit," and not as a right that arises by "necessary implication." The latter term is more restrictive than the former.

Other cases, in which the precise issue presented here is not the primary point of the decision, do recognize that municipalities may charge a fee for granting a franchise because a franchise is the grant of a right to use public property for the utility's own purpose. *See City of Albuquerque v. New Mexico Pub. Serv. Comm'n*, 115 N.M. 521, 854 P.2d 348, 360 (1993) (discussing the distinction between the right to charge a franchise fee and the right to determine utility rates); *City of Little Rock v. AT & T Communications of the Southwest, Inc.*, 318 Ark. 616, 888 S.W.2d 290, 292 (1994) (franchise fees are rental payments for use of municipal right-of-way); *Berea College Util. v. City of Berea*, 691 S.W.2d 235, 237 (Ky.App.1985) (franchise fee is rental for the use of city streets). Arizona law is in accord with this concept of the franchise as a grant of the right to use public property in a special and exclusive way. *See Northeast Rapid Transit Co. v. City of Phoenix*, 41 Ariz. 71, 82, 15 P.2d 951, 956 (1932). A franchise being akin to a lease, it arguably follows that a county should be able to charge rent as consideration for the use allowed. None of these cases, however, deals with or, even mentions, the term "necessary implication." Given that the County's power to grant a franchise would not exist but for A.R.S. section 40–283, we believe that all power relating to the issuance of franchises must flow from that statute. None of the cases referred to above considers the question that is at the heart of this case. None was decided in the face of a law as restrictive as Arizona's.

■ Several secondary arguments the County raises merit comment. One, which is somewhat unclear, is that a franchise fee is simply a contract and the County can undoubtedly enter into contracts. This lacks merit because, as we have said, any right to charge a franchise fee must flow expressly, or by necessary implication, from the statute authorizing the counties to grant franchises.

■ The County argues that because Southwest for many years operated under a franchise agreement that called for the payment of a fee, and because more recently it

entered into negotiations concerning the franchise fee, it is estopped to deny the County's right to charge such a fee. This argument too, lacks merit. The fee called for by the original franchise agreement—a fee that was never collected—is not the subject of this action. The fact that Southwest negotiated the franchise fee that is in question here does not estop Southwest from asserting its position because it expressly reserved the right to challenge the basis for the fee.

The judgment of the trial court is affirmed.

THOMPSON, P.J., and GRANT, J., concur.