[No. 14567.    Department Two.    May 7, 1918.]

# THE STATE OF WASHINGTON, *on the Relation of Harvig Ellertsen, Respondent,* v. HOME TELEPHONE & TELEGRAPH COMPANY OF SPOKANE, *Appellant.*[1]

TELEGRAPHS AND TELEPHONES — FRANCHISES — POWER TO GRANT — STATUTES. Rem. Code, § 9314, which gives a telephone company the right to maintain lines along any public road, provided that, where the right of way is in an incorporated city, the "consent" of the city council shall be first obtained, does not prevent a city from granting a franchise controlling the rates that may be charged.

SAME. A city of the first class has power to grant a telephone franchise for the use of the city's streets and alleys, with limitations on the rates that may be charged, under Rem. Code, § 7507, subd. 7, empowering first-class cities to regulate and control the use of streets and alleys and to authorize or prohibit the use of electricity at, in or upon them, and to prescribe the terms and conditions upon which the same may be used and to regulate the use thereof.

SAME—FRANCHISE—POWER TO GRANT—STATUTES—IMPLIED REPEAL. Rem. Code, §7507, subd. 7, empowering cities of the first class to grant telephone franchises for the use of its streets and alleys, was not impliedly repealed by the enactment of the general telephone franchise act of 1890, Id., § 9300 *et seq.*

SAME—FRANCHISES—CONDITIONS. A telephone franchise ordinance limiting the amount of the rates or charges is a contract obligation, binding until abrogated by the state in the exercise of its police power; and the company having accepted and agreed upon the terms cannot complain thereof until relieved by the public service commission.

SAME—CONDITIONS—RELIEF—FILING SCHEDULE OF RATES. In such a case, a franchise limiting one-party residence rates to $2 is not affected by the company's filing with the public service commission a schedule raising the rate to $3, where there was no compliance with Rem. Code, § 8626-43, requiring affirmative action by the public service commission directing the termination of contracts in order to relieve the company from its contractual obligations to users of its service.

MANDAMUS—WHEN LIES—TO PUBLIC SERVICE CORPORATIONS—TELE-GRAPHS AND TELEPHONES. The users of a telephone service have a right to apply to the courts for a writ of mandate to compel the

[1]Reported in 172 Pac. 899.

company to perform its contract obligations, there being nothing in
the public service commission act requiring that they seek a remedy
before any special tribunal.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered June 19, 1917,
upon findings in favor of the plaintiff, in an action for
a writ of mandate, tried to the court. Affirmed.

*Post, Russell, Carey & Higgins,* for appellant.
*J. M. Geraghty* and *Alex M. Winston,* for respondent.

WEBSTER, J.—The appellant has been operating, since
1905, a telephone system in the city of Spokane. The
franchise granted it provided that the charge for tele-
phones installed in private residences should not ex-
ceed $2.25, with a discount of twenty-five cents per
month for cash payments made before the 10th day of
the month in which the service is rendered. For the
sake of brevity we will refer to this as the $2 rate.
After the passage of the public service commission law
in 1911, the appellant filed with the public service com-
mission a copy of its franchise showing the above rate.
Subsequently the appellant consolidated with another
telephone company which had theretofore been operat-
ing in Spokane but which had lost its franchise, and
on January 18, 1915, the appellant filed with the public
service commission a rate schedule to be effective on
February 20, 1915, naming as its rate for a single party
residence telephone the sum of $3 per month instead of
the $2 rate as provided in appellant's franchise. The
relator brought this action seeking a writ of mandate
directing the appellant to install in his residence a
single party telephone service at the $2 rate. The
peremptory writ was issued by the superior court, and
this appeal followed. The question presented thereby
is whether the superior court, by mandamus, has juris-

diction to compel the appellant to furnish service for a single party residence telephone at the $2 rate, that rate being lower than the rate set forth in the tariff filed by the appellant with the public service commission.

The contention of the appellant is that the rate provision in the franchise never was a contract, and that the city in granting a franchise had no authority to fix a rate, and that, even assuming that the franchise rate was valid and enforcible, it was superseded by the enactment of the public service commission law and the filing by the appellant of a tariff under the provisions of that act.

Section 9314, Rem. Code, provides:

"Any telegraph or telephone corporation or company, or the lessees thereof, doing business in this state, shall have the right to construct and maintain all necessary lines of telegraph or telephone for public traffic along and upon any public road, street, or highway. . . . Provided, further, that where the right of way, as herein contemplated, is within the corporate limits of any incorporated city, the consent of the city council thereof shall be first obtained before such telegraph or telephone lines can be erected thereon."

In *State ex rel. Spokane & British Columbia Telephone & Telegraph Co. v. Spokane,* 24 Wash. 53, 63 Pac. 1116, this court held:

"The contention of counsel for appellant that the statute limits the authority of the city council to reasonable and proper regulations, and to prescribing the method in which telegraph and telephone companies shall construct and operate their lines, cannot be conceded. As has been seen, by another statute, the authority to regulate and of complete control of such lines has been given. The power to refuse is correlative with the power to consent, and such power is plainly authorized by the statute."

In the case of *Commercial Elec. Light & Power Co. v. Tacoma,* 17 Wash. 661, 50 Pac. 592, in which the court was considering an ordinance granting a franchise to an electric company to furnish power to business portions of Tacoma, this court, in referring to the franchise ordinance, said:

"The ordinance which was sought to be repealed was in the nature of a contract, and it was not in the power of one of the contracting parties to destroy the rights and property of the other by merely declaring the contract abrogated."

The appellant, however, contends that there is no express delegation by the state to the city of the power to impose terms as to rates in the granting of consent to operate a telephone system. This express question was passed on adversely to this contention in *State ex rel. Tacoma v. Sunset Tel. & Tel. Co.,* 86 Wash. 309, 150 Pac. 427, L. R. A. 1917F 1178, where Judge Holcomb, speaking for the court, said:

"We are not impressed with appellant's contentions (1) that the city had no power to attach conditions to the Webster franchise; and (2) that, even if it had the power to attach conditions, the conditions attached were void.

"The state had previously delegated to cities of the first class, of which relator is one, the general power 'to lay out, establish . . . streets, alleys . . . and to regulate and control the use thereof, . . . and to authorize or prohibit the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof.' Rem. & Bal. Code, § 7507, subd. 7.

"Though appellant insists that this statutory provision is not a grant of power in regard to telephone franchises, because 'it does not, in express terms, refer to telephone lines, or purport to confer the right to grant telephone franchises,' we do not agree there-

with. The power is both generally and specifically conferred.

"Again, appellant urges that, even if the power were conferred by § 7507, *supra,* it was repealed by the subsequent enactment by the same legislature of § 9314, Rem. & Bal. Code (Laws 1890, pp. 292-294; Rem. & Bal. Code, § 9300 *et seq.*), being the general telephone franchise act. These contentions were certainly decided adversely to appellant's views in *State ex rel. Spokane & B. C. Tel. Co. v. Spokane,* 24 Wash. 53, 63 Pac. 1116, and in *Tacoma R. & Power Co. v. Tacoma,* 79 Wash. 508, 140 Pac. 565. Notwithstanding appellant's argument to the contrary, in both the cases mentioned, it was distinctly held that the power to regulate and control the use of the streets was conferred by § 7507, subd. 7, *supra,* including the power to attach conditions. The question is not open to debate. All the conditions imposed were within the city's corporate powers and valid conditions attaching to the franchise. Indeed, if not, then Webster never obtained the city's assent to the use of the streets and never had a franchise therefor."

In the later case of *State ex rel. Walker v. Superior Court,* 87 Wash. 582, 152 Pac. 11, the Tacoma case was cited with approval and we said:

"In the proviso in § 9314, it is said that the highways within the corporate limits of a city cannot be used without the consent of the city council. By the subdivision of § 7507 quoted, the city, in its corporate capacity, is given the powers specified therein. By the decision of this court in the case last cited, it is held, as already noted, that by that statute (§ 7507) the power is both generally and specifically conferred in regard to telephone franchises and right to impose conditions. The power of the city, therefore, with regard to telephone franchises and the right to impose conditions when such franchises are granted flows from a statute which gives that power to the *city,* as distinct from a statute conferring such power upon the legislative authority of the city. Herein lies the distinction between this case and the *Benton, Ewing* and *Dolan* cases.

Whether under the proviso in § 9314, which requires the consent of the city council before highways within the city can be used, the city council had the right to impose conditions, we need not here inquire, because it has already been held that the power to impose such conditions is derived from the other section of the statute referred to.''

Thus the law is settled that the city of Spokane had the authority to fix in the appellant's franchise the telephone rates to be charged. If it is true that the city had the right to withhold its consent before a telephone company would be allowed to use its streets, and to impose as a condition of granting its consent the maintenance of certain rates to be charged to users of the telephone service, the telephone company accepting such franchise is, as long as it operates thereunder, bound by its terms unless relieved therefrom by the public service commission law. And it matters not what nomenclature may be used to describe the obligation of the franchise holder; whether it be called a contract, a condition, or as in *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D 78, L. R. A. 1915C 287, a grant, license or reservation. For, as said in that case:

''The power to fix and determine rates being within the police power, the city might *establish* rates, but that it could not, under the delegation quoted, *contract* so as to bind itself or the other party as against the exercise of the police power,''

which merely means that the rate established in the franchise is binding until the sovereign police power cuts the bond.

A franchise obligation is not less a contract because it may ultimately be abrogated by the state in the exercise of its police power than was the obligation set aside in the case of *Raymond Lum. Co. v. Raymond Light & Water Co.,* 92 Wash. 330, 159 Pac. 133, L. R. A.

1917C 574, not a contract because revocable. No one would suggest that, until the public service commission interfered, the relation between the two parties to that suit had not been that of two parties to a contract.

A different situation is presented by the fixing of rates *in* the franchise from that which arises in those cases where, *after* the granting of the franchise, the city has attempted to fix rates. This distinguishes the case of *Tacoma Gas & Elec. Light Co. v. Tacoma,* 14 Wash. 288, 44 Pac. 655, from the case at bar, for here the city could have consented, or refused to have consented, to the granting of a franchise, but having consented, it included in the franchise the terms upon which that consent rested. "These terms were accepted by the company and the ordinance discloses the contract between them. If the terms were distasteful to the company it could have refused them or at least protested against them." *Southern Bell Tel. & Tel. Co. v. Richmond,* 103 Fed. 31.

The appellant and the city of Spokane having agreed upon the terms under which the appellant was allowed to operate, thereby entered into a contract which each of them had authority to make, and good faith and fair dealing will not permit the appellant to occupy the streets of Spokane by virtue of its franchise and, at the same time, refuse to comply with the conditions thereof. It received from the city what it, at the time, deemed adequate consideration for its contract, and as long as it retains that consideration it must, in receipt therefor, perform the service at the price agreed upon, except as it may be relieved of those terms and conditions by the operation of the public service commission law.

That brings us to the consideration of the question of the effect of the filing of a schedule of rates by the

appellant with the public service commission. It having been held in *State ex rel. Tacoma v. Sunset Tel. & Tel. Co., supra,* that:

"In general, the provision was a valid condition with valid reasons to support it, and was an agreed provision of the contract. It was not, as appellant supposes, void as against public policy, nor *ultra vires* and void as beyond the corporate power of the city."

It is not necessary to, and we do not, decide in the determination of this case that the public service commission law interferes with the provisions contained in the appellant's franchise; but assuming that, by the act, the state did give the public service commission the right to modify the franchise rates, those rates would remain in effect until such time as the appellant has complied with the requirements of the act. Section 43 of the public service commission law (Laws 1911, p. 567) provides:

"Nothing in this act shall be construed to prevent any telegraph company or telephone company from continuing to furnish the use of its line, equipment or service under any contract or contracts in force at the date this act takes effect or upon the taking effect of any schedule or schedules or rates subsequently filed with the commission, as herein provided, at the rates fixed in such contract or contracts: Provided, however, That the commission shall have power, in its discretion, to direct by order that such contract or contracts shall be terminated by the telephone company or telegraph company party thereto, and thereupon such contract or contracts shall be terminated by such telephone company or telegraph company as and when directed by such order." Rem. Code, § 8626-43.

We having decided that the rate provision in the franchise is a contract, it follows that § 43 covers the obligation owing from the appellant to the relator, for, under well settled principles, those citizens desiring

telephone service, being the beneficiaries of that provision of the franchise, would become to that extent parties to the contract, and the obligation of appellant would become a direct obligation to them. Before the appellant can charge a greater rate than $2 per month the public service commission must have done more than merely receive in its files a new schedule of rates. There must be affirmative action by the commission relieving the appellant of its contractual obligation to the users of its telephone service.

The public service commission not having acted upon the schedule filed by the appellant, and not having directed "by order that such contract shall be terminated by the telephone company," the contract still continues in effect. As was said in the case of *Seattle Elec. Co. v. Seattle,* 78 Wash. 203, 138 Pac. 892.

"While the passage of the public utilities law does not abrogate contracts until the commission has fixed a different rate, it does not follow that the passage of the public utilities law may not withdraw from the city the right to exercise police power from and after the date it became effective."

In other words, after the passage of the public service commission law, the city no longer had any power in regard to rates charged by appellant, but the rates already provided for in the franchise remained in effect until the public service commission had taken some action regarding them. The mere filing of a new schedule of rates was insufficient to establish that schedule as a basis for the appellant's charges for service such as is demanded by the relator, in view of the provisions of § 43 (Id., § 8626-43).

The question presented here is not the question of the reasonableness of rates, but the question involves the contractual rate, and there is nothing in the public service commission law which provides that the relator

must seek his remedy before any special tribunal. In seeking to compel the appellant to furnish the service, which service it contracted to furnish, the relator had the right to apply to the courts for his relief, and not only had he the right, but he is seeking his relief before the only tribunal which could afford him a plain, speedy and adequate remedy. The public service commission, as is said by the judge of the superior court who heard this case,

"is not concerned with the enforcement of any contract, but is only concerned with the question as to the reasonableness of the rates about which the contract may speak."

There is no conflict of authority between the commission and the court, for the reason that the commission has not yet attempted to take jurisdiction of the rates provided for in the franchise, and, until such time, jurisdiction to enforce that contract rests with the court.

The city of Spokane having had the power to fix the rates in the appellant's franchise, and having done so, and the public service commission not having as yet assumed jurisdiction as provided in § 43 (Id., § 8626-43) of the public service commission law, it follows that relator was entitled to the installation of the telephone at the rate provided in the franchise, and the superior court was correct in issuing the writ prayed for.

Judgment will be affirmed.

ELLIS, C. J., MOUNT, CHADWICK, and HOLCOMB, JJ., concur.