[No. 24567. *En Banc.* November 10, 1933.]

THE CITY OF SPOKANE, *Respondent,* v. SPOKANE GAS & FUEL COMPANY, *Appellant.*[1]

[1]Reported in 26 P. (2d) 1034.

104

*Graves, Kizer & Graves,* for appellant.

*Alex M. Winston* and *G. M. Ferris,* for respondent.

BLAKE, J.—May 12, 1904, the city of Spokane passed an ordinance granting to Roger H. Williams a franchise for the use of the streets of the city for the distribution of illuminating and fuel gas. Williams accepted the franchise July 7th of that year. The defendant is the successor in interest of Williams to the rights conferred and the obligations imposed by the terms of the ordinance.

Among other things, the ordinance provided for a maximum charge to consumers of $1.50 per thousand cubic feet. It also provided that the city

" . . . shall have power to regulate, control and determine the maximum rates . . . every ten years during the life of the franchise . . . ; said rates so established to be reasonable rates."

The ordinance provided that the rates should be so fixed by ordinances to be passed between the first day of May and the first day of November, 1912, 1922, 1932 and 1942, respectively. By reason of the creation of the public service commission, this provision of the ordinance was never acted upon. It is material here only as it is, in a degree, interwoven with the next section of the ordinance, which provides that:

"The grantees herein . . . shall, for the first twenty-five years from the time of the passage of this ordinance . . . pay to and for the use of the said city of Spokane, an amount equal to two per centum of their gross receipts from the sale of gas in the said city, and the percentage to be thereafter paid shall be fixed at the same time as the rate to be charged for gas as herein provided . . . "

This provision was complied with until the month of June, 1929, when the period of twenty-five years provided for in the franchise ordinance expired. Since then, no payments thereunder have been made by defendant. Thereafter, the record is silent as to the conduct of the parties with respect to their rights and liabilities under this provision of the ordinance until February 8, 1932, when the city passed ordinance No. C5066. This ordinance provided "that a proper, fair, just and reasonable annual charge to . . . the present owner of the franchise," for the period from June 15, 1929, to December 31, 1931, "would be two per centum of its gross receipts from the sale of gas . . ."

Plaintiff brought this action, alleging that the rate per cent fixed in ordinance No. C5066 was reasonable, and that, computing at such rate, there was due from the defendant, for the period from June 15, 1929, to December 31, 1931, the sum of $21,230.61. The defendant, answering, denied the rate fixed by ordinance No. C5066 was reasonable, and denied the city's power and authority to pass the ordinance. By way of affirmative defense, defendant alleged that the ordinance was passed without notice to it and without giving it an opportunity to be heard; that the rate was unreasonable and arbitrary, and arrived at without investigation. The city replied, denying the affirmative allegations of the answer.

Upon the issues so framed, the cause went to trial before the court and jury. At the close of the testimony, the court directed the jury to return a verdict for plaintiff in the full amount prayed for. From judgment entered on the verdict, plaintiff appeals.

The pith of the question with which we are confronted is whether appellant is bound by the city's

finding in ordinance No. C5066 that two per cent of the gross receipts was reasonable. The answer is dependent upon the capacity in which the city was acting in passing the ordinance. If it was acting in its governmental capacity, then the appellant is bound by the finding, unless, in making it, the city acted arbitrarily or capriciously. If, on the other hand, the city was acting in its proprietary capacity, then the reasonableness of the charge may be challenged by appellant in a proper tribunal. *St. Louis v. Western Union Tel. Co.,* 63 Fed. 68. In that case, it is said:

"No question is made of the well-established rule that, in all matters pertaining to the police regulation of municipalities, their ordinances, being of the nature of legislative discretion, are *prima facie* reasonable. In the matter of licensing trades and avocations, and fixing the amount of permissible taxes therefor, in the very nature of things, the action of the governing board or legislative department, as to the amount thereof is presumptively honest and just. . . . And under the decision of the supreme court in this case, under the power to regulate, the city may by ordinance require the company to pay for the use of such streets. The city, in such case, is the sole judge of the necessity and wisdom of such an ordinance; and the ordinance making such requirement would be *prima facie* reasonable. But as to the amount of the rental, which is the reasonable value of the use, and no more, the case is *sui generis;* and upon what principle of common right and justice the party demanding the rent should be permitted to establish for itself a *prima facie* value by adopting an ordinance, and throwing the whole burden of establishing its unreasonableness upon the defendant, is not apparent to my mind. . . . But, as the defendant occupies public property under the dominion of the city, the city has a right, by ordinance, to demand what? Not such rental therefor as to its legislative body may seem just and proper, but such rental as may represent what is reasonable for the use of the territory appropriated."

Speaking to the same point, the supreme court of the United States, in *St. Louis v. Western Union Telegraph Co.*, 148 U. S. 92, said: "The inquiry must be open in the courts."

There can be no question that, in enacting the original ordinance in 1904, the city was acting in a governmental capacity, since the granting of franchise is universally recognized as the exercise of sovereign power. The municipality may refuse to grant a franchise at all. *State ex rel. Spokane & B. C. Tel. Co. v. Spokane,* 24 Wash. 53, 63 Pac. 1116. If it grants a franchise, it may do so on its own terms, conditions and limitations. The applicant's alternative is to accept the franchise as offered, or reject it as a whole. *Southern Bell Tel. & Tel. Co. v. Richmond,* 103 Fed. 31; *State ex rel. Ellertsen v. Home Tel. & Tel. Co.,* 102 Wash. 196, 172 Pac. 899. So, the franchise having been accepted by appellant's predecessor in interest, appellant was bound to pay the city two per cent of its gross receipts for the first twenty-five years. During that period, it would not be heard to say that the charge was unreasonable. 4 McQuillin, Municipal Corporations (2d ed.), 717.

It does not follow, however, that appellant is thereafter foreclosed from raising its voice in protest to the legislative fiat of the city council fixing the rate at which it shall pay. For, upon acceptance by the grantee, the franchise becomes a contract. It is alike binding upon the city and the grantee. The city cannot thereafter impose a burden which it could have imposed as a condition to granting the franchise; nor can the company escape its burdens. *Federal Gas & Fuel Co. v. City of Columbus,* 96 Ohio St. 530, 118 N. E. 103; *Tacoma Gas & Elec. Light Co. v. Tacoma,* 14 Wash. 288, 44 Pac. 655; *State ex rel. Ellertsen v. Home Tel. & Tel. Co.,* 102 Wash. 196, 172 Pac. 899; *Springfield*

*v. Inter-state etc. Co.,* 279 Ill. 324, 116 N. E. 631; *Lewis v. Nashville Gas & Heating Co.,* 162 Tenn. 268, 40 S. W. (2d) 409; *Hartford v. Connecticut Co.,* 107 Conn. 312, 140 Atl. 734; *Slade v. Lexington,* 141 Ky. 214, 132 S. W. 404, 32 L. R. A. (N. S.) 201.

In 4 McQuillin, Municipal Corporations, 731, it is said:

"Inasmuch as a franchise to use the streets, when accepted, becomes a contract, the rules relating to construction of municipal contracts in general, especially contracts between a municipality and a public service company, are applicable in so far as conditions are the same."

Now, what was the character of the charge imposed by respondent under this contract in ordinance No. C5066, requiring appellant to pay two per cent of its gross receipts? That question must be answered by the nature of the right for which it was to be paid. What appellant acquired by the franchise was the right to lay gas mains in the streets of the city —to occupy a portion of the streets. A charge imposed in a franchise is not a tax or a license. It is not imposed under the sovereign power of taxation or police regulation. If it were, of course, it could be challenged only if arbitrary or so grossly unreasonable as to be capricious.

Such charges as these have been quite generally held to be in the nature of rental for the use and occupation of the streets. *St. Louis v. Western Union Telegraph Co.,* 148 U. S. 92; *St. Louis v. Western Union Telegraph Co.,* 63 Fed. 68; *Springfield v. Postal Telegraph-Cable Co.,* 253 Ill. 346, 97 N. E. 672; *Springfield v. Inter-state, etc. Co.,* 279 Ill. 324, 116 N. E. 631; *Lewis v. Nashville Gas & Heating Co.,* 162 Tenn. 268, 40 S. W. (2d) 409; *Hartford v. Connecticut Co.,* 107 Conn. 312, 140 Atl. 734; *Mitchell v. Dakota Central*

*Telephone Co.,* 25 S. D. 409, 127 N. W. 582; *Tulare County v. Dinuba,* 188 Cal. 664, 206 Pac. 983.

In some of the above cases, the charges were not based on agreements in franchise contracts. Such cases are cited for the purpose of showing how far some courts have gone in distinguishing charges made for the occupation of streets from exactions imposed under the powers of taxation and police regulation.

It must be kept in mind that we are here dealing with a claimed right arising in contract. In discussing an analogous subject, it is said in 4 McQuillin, Municipal Corporations (2d ed.), 936:

"The right of the state or the municipality by delegated power to regulate rates by compulsion is a police power, and must not be confused with the right of a city to exercise its contractual power to agree with a public service company upon the terms of a franchise. The exercise of a power to fix rates by agreement does not include or embrace any portion of the power to fix rates by compulsion."

If the charge here in question be in the nature of a rental (and we think it is), made pursuant to the terms of a contract, it would seem logically to follow that the fixing of such rental was not a governmental act of the city. We have held that, in the maintenance and improvement of streets and the building of bridges, a city acts in its proprietary rather than in its governmental capacity. *Seattle v. Stirrat,* 55 Wash. 560, 104 Pac. 834, 24 L. R. A. (N. S.) 1275; *Engelking v. Spokane,* 59 Wash. 446, 110 Pac. 25, 29 L. R. A. (N. S.) 481. In the case of *Seattle v. Stirrat, supra,* it is said:

"In the exercise of its proprietary or private functions, it [the city] is held to its private contracts, and is subject to estoppels as is any private corporation."

Since, then, the city was acting in its proprietary capacity in passing ordinance No. C5066, the reason-

ableness of the rate of compensation therein fixed is open to challenge by appellant. The fact that the rate is the same as that fixed by agreement in the franchise ordinance of 1904 is evidence that it is reasonable, but it is not conclusive. It is too obvious for argument that a rate agreed to in 1904 may be grossly unreasonable in 1932. What was said in *Slade v. Lexington,* 141 Ky. 214, 132 S. W. 404, 32 L. R. A. (N. S.) 201, is pertinent here:

"The parties evidently meant that the contract between the city and the water company should be carried out upon the terms agreed on for twenty-five years, but it was contemplated that the city would grow, and what were reasonable terms then might not be reasonable terms in twenty-five years under changed conditions; and so, they provided that the contract should be renewed, but the terms of the renewal were to be agreed on at the end of the twenty-five years. The water company has invested a large sum of money upon the faith of its contract rights here, and the case is not substantially different from that of a tenant who has built an extensive improvement upon a piece of land under a contract that his lease is to be renewed. A court of equity will not allow injustice to be done or one to reap where another has sowed, upon the faith of a contract like this. . . . Neither of the parties could foresee what changes twenty-five years would bring about. Neither could tell then what would be reasonable terms at the end of twenty-five years, and so the agreement was expressed as it was."

It would extend this opinion too far to review the evidence offered by appellant and admitted by the court. It will suffice to say that we think it was sufficient to make a case for the triers of fact on the question of reasonableness of the rate fixed by ordinance No. C5066.

Since the cause must go back for retrial, there are certain assignments of error, predicated on the rejection of proffered evidence, which should be noticed.

Appellant offered evidence tending to show what other utility companies were paying under various franchises granted by the city for the privilege of occupying the streets, with poles, wires, conduits and street railway tracks. That such evidence is competent—that it has probative value in determining the reasonableness of the charge made to appellant—can hardly be doubted. That it tends to open a collateral issue, is the main objection to it. It is for this reason that the admission of such evidence is entrusted largely to the discretion of the trial judge. It should not be allowed so far as to becloud the principal issue.

We think that the evidence offered, however, bears analogy to evidence of sales of other property and of the owner's estimate of the value of his own property in condemnation cases. What stronger evidence can we have of the value of a particular property than the price paid for similarly situated property at about the same time? And what better evidence of the reasonableness of the charge here fixed by the city can we find than the price it has asked of others for similar privileges at about the same time appellant's franchise was granted and subsequent thereto? We think the proffered evidence should have been received, with the exception of that relating to the franchise of the Washington Water Power Company. The latter's franchise was granted in 1890. We think that was too remotely prior to the granting of appellant's franchise to have any probative value.

While the question is novel, we hold, for the purposes of this case, that such character of evidence is admissible as to all such franchises as may have been granted subsequent to appellant's. It seems obvious that, where respondent now undertakes to fix reasonable rates under a contract entered into in 1904, the evidence of value it (respondent) placed on similar

privileges in the meantime is competent, in that it tends to prove respondent's own estimate of the rental value of the occupancy of its streets. It logically follows that evidence of the relative burdens of the occupancy of the streets by the various other utilities (whose franchises are admissible) is also competent.

■ Error was assigned on the rejection of opinion evidence as to the reasonable amount to be paid by appellant. The analogy of the condemnation cases holds as to this character of evidence also. We think opinions of duly qualified expert witnesses competent evidence.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with the views herein set out.

MAIN, MITCHELL, HOLCOMB, MILLARD, and STEINERT, JJ., concur.

TOLMAN, J. (dissenting)—I accept for present purposes the statement of the majority which reads:

"Since, then, the city was acting in its proprietary capacity in passing ordinance No. C5066, the reasonableness of the rate of compensation therein fixed is open to challenge by appellant. The fact that the rate is the same as that fixed by agreement in the franchise ordinance of 1904 is evidence that it is reasonable, but it is not conclusive."

Under the facts of this case, this seems a reasonable rule, though respectable authority based on cogent reasoning might be cited to the contrary.

The city acted upon this rule in presenting its evidence to the trial court, and under this rule made out a *prima facie* case. The defense, to meet the issue thus presented, showed only that its customers and its sales had tended to decrease in recent years under the growing competition from others furnishing light and heat,

but, as the amount to be paid was fixed as a percentage on the gross sales, it nowhere appeared from the evidence thus presented that the rental became any more burdensome because of such decrease. In other words, the rental bore a fixed relation to the gross receipts, and increased and decreased as those receipts fluctuated. Hence, the mere fact that appellant's activities were limited and tended toward a decrease under modern conditions furnished no evidence that the rate or the amount to be paid was any more unreasonable under the conditions shown than it had been at any time during the twenty-five years when it was paid without protest. It was upon this theory that the case was taken from the jury. The city now seems to concede that, if the evidence offered with reference to other franchises granted to other public service corporations was properly excluded, then the ruling was right.

The whole question here, then, is as to the competency of the evidence offered tending to show what was paid to the city by other public service corporations for the use of its streets in furnishing service to its citizens. There was no attempt made to limit this evidence to particular franchises bearing any reasonable similarity to the franchise here involved, if there were any such. Seemingly, it is admitted that these various franchises were granted at different times for entirely different purposes, each placing a different burden upon the streets, and each bringing to the citizens a different character of service.

In my judgment, the trial court correctly ruled when he said:

"If the court should enter into that sort of an inquiry, there would be no end to it. The phase involved in this issue here does not involve the service of other public utilities. . . . A contract made either before

in time or subsequent to your franchise, the conditions under which it was made, would have to be inquired into. The judgment of the jury would have to be substituted for the judgment of the agencies of the municipality which at that time negotiated and granted the privilege to the applicant.''

Obviously, there is no answer to be found which will meet that ruling. To submit to a jury all of the franchises granted by the city, whether by vote of its people or by action of the city council, in the last thirty-five or forty years, and to attempt to inform the jury as to the conditions under which each was granted, and then ask them to draw a comparison, would result only in confusion worse confounded.

Each individual franchise granted by the city must stand on its own foundation. There is always involved the peculiar question of what, under the particular circumstances then existing, the particular traffic can, should and will bear; the necessity of the public, its need of the service, and the general good, if any, to be accomplished by granting the right to furnish it. It is conceivable that, in some conditions, because of the general good to follow, a franchise might well be granted with no compensation to the city; while in another instance, under different conditions, a service placing an even greater burden on the streets might reasonably be required to pay a very substantial rental. To ask a jury to review the whole franchise history of a city and from such a review to say by their verdict what is a reasonable charge in a particular case, is to lose sight of every established rule for arriving at a correct result.

I therefore dissent.

BEALS, C. J., concurs with TOLMAN, J.

GERAGHTY, J., took no part.