[No. 25010-1-II. Division Two. May 4, 2001.]

THE CITY OF LAKEWOOD, *Appellant*, v. PIERCE COUNTY, *Respondent*.

*Daniel B. Heid, City Attorney*, for appellant.

*Ramona L. Monroe* and *Patrick J. Schneider* (of *Stoel Rives, L.L.P.*), for respondent.

*Paul M. Parker* on behalf of Washington State Association of Counties, amicus curiae.

*Wayne D. Tanaka* on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

ALEXANDER, J.[*] — The Thurston County Superior Court granted summary judgment to Pierce County, holding that the City of Lakewood may not require the County to enter into a franchise agreement to operate sewer lines and facilities under Lakewood's streets and that Lakewood may not charge the County a fee for such franchise in excess of Lakewood's administrative costs. We affirm.

## FACTS

Pierce County operates a regional sanitary sewer system under the authority of chapter 36.94 RCW. Before the City of Lakewood incorporated in 1996, the County installed sewer lines under the public streets and rights-of-way that are now within Lakewood. The sewer lines serve residences and buildings within Lakewood as well as residences and buildings outside of Lakewood. Upon incorporation, Lakewood assumed control of the public streets and rights-of-way within the area of incorporation pursuant to RCW 35.02.180.

In 1997, Lakewood and the County began negotiating for a franchise for the continued use of Lakewood rights-of-way by the County sewer system, pursuant to RCW 35A.47.040. The parties could not agree on franchise terms, and negotiations ended in late 1997 or early 1998.

In May 1998, Lakewood brought suit in Thurston County

[*] Chief Justice Alexander is serving as a judge pro tempore for the Court of Appeals pursuant to CAR 21(c).

Superior Court against the County.[1] Lakewood's complaint focused on the potential conflict between RCW 35A.47.040, which authorizes cities to grant franchises for sewer operations under city streets, and RCW 36.94.140, which authorizes counties to operate sewer systems. RCW 35A.47.040 provides:

> Every code city shall have authority to permit and regulate . . . and to grant nonexclusive franchises for the use of public streets, bridges or other public ways, structures or places above or below the surface of the ground for . . . sewer and other private and publicly owned and operated facilities for public service.

RCW 36.94.140 provides:

> Every county, in the operation of a system of sewerage . . . shall have full jurisdiction and authority to manage, regulate, and control it and to fix, alter, regulate, and control the rates and charges for the service and facilities to those to whom such service and facilities are available, and to levy charges for connection to the system.

In its Complaint, Lakewood asked the court for a declaratory judgment that:

- "[Lakewood] has the authority to regulate and control the [County's] use of [Lakewood's] city streets and rights of way, including the authority of [Lakewood] to permit and regulate the structures, facilities, property and lines of the [County's] sewerage system located within the city streets and rights of way of [Lakewood], and that [Lakewood] has been granted the authority to franchise the use of such city streets and rights of way;" and

- "[Lakewood] has the authority to negotiate a franchise fee reflective of its full costs and the full impacts to its streets and rights of way in connection with" the County's sewerage system.

Clerk's Papers at 10-11.[2]

---

[1] "[A]ctions against any county may be commenced . . . in the superior court of either of the two nearest judicial districts." RCW 36.01.050(1).

[2] An additional cause of action, relating to the transfer of the County's sewer system to Lakewood, is not before this court.

The County counterclaimed and asked the trial court to enter a declaratory judgment that:

• Lakewood is without authority to require a franchise from the County to operate the County's sewerage system within Lakewood rights-of-way; and

• Lakewood is without authority to impose a franchise fee for the presence or operation of the County's sewerage system.

The County moved for summary judgment and both parties conceded that there were no genuine issues of material fact. The trial court granted the County's motion and entered an order in which it denied Lakewood the relief it requested in its complaint, and granted the relief requested in the first two causes of action of the County's counterclaim.

In its Memorandum Opinion, the trial court held that RCW 35A.47.040 and RCW 36.94.140 are inconsistent with each other and that RCW 36.94.140 controls over RCW 35A.47.040. The trial court concluded that because of the inconsistency, "RCW 35A.47.040 must be construed ('modified') to remove county sewers from the authority to permit and regulate and to grant franchises provided to the city in the statute." Clerk's Papers at 232.

The trial court also held that Lakewood may not require the County to obtain a franchise for its regional sewer lines passing beneath Lakewood's streets and that it may not charge the County a fee for such a franchise in excess of Lakewood's administrative costs.

The trial court denied Lakewood's motion for reconsideration. Lakewood then filed a timely notice of appeal with this court.

## DISCUSSION

██ When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999). Summary

judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one that affects the outcome of the litigation. *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). All facts and reasonable inferences are reviewed in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *Bishop*, 137 Wn.2d at 523.

Both parties still agree, and the record confirms, that the material facts in this case are undisputed. The only issues before us, as was the case at the trial court, are questions of law: whether Lakewood may require the County to obtain a franchise for its regional sewer lines passing beneath Lakewood streets, and whether Lakewood may charge the County a fee for this right in excess of Lakewood's administrative costs.

I. *Lakewood's authority to require the County to enter into a franchise agreement for the operation of sewer lines and facilities under Lakewood's streets*

Both parties agree that, at a minimum, Lakewood may negotiate a franchise agreement with the County for the operation of sewer lines under Lakewood's streets, and that Lakewood may grant a franchise to the County if the parties reach an agreement. This position is consistent with the plain language of RCW 35A.47.040, as are the parties' actions in trying to negotiate such a franchise before filing this lawsuit. The parties' positions diverge, however, on the issue raised by the County's Motion for Summary Judgment: whether Lakewood may *require* a franchise from the County for the use of Lakewood's streets for County sewers.

The trial court concluded that Lakewood may not require the County to obtain a franchise to use Lakewood's streets for the operation of a sewerage system. The trial court based its conclusion, in part, on its determination that County sewers are not included in the authority granted

to Lakewood by RCW 35A.47.040.[3]

■ We may use any valid ground to affirm the trial court's conclusion, even if our reasoning differs from that of the trial court. *See State v. Williams*, 93 Wn. App. 340, 347-48, 968 P.2d 26 (1998), *review denied*, 138 Wn.2d 1002 (1999) (citing *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986)). We hold that the trial court erred in determining that County sewers are not included in the authority granted to Lakewood by RCW 35A.47.040, but we affirm it on other grounds.

■ The trial court construed RCW 36.94.140 and RCW 35A.47.040 and concluded that the former controls over the latter. The construction of statutes is, of course, a question of law that we review de novo under the error of law standard. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994).

■■ When interpreting statutes, we first look to the plain meaning of words used in the statutes. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990). We may give a nontechnical statutory term its dictionary meaning. *Fjermestad*, 114 Wn.2d at 835.

■ If the statutory language is clear and unambiguous, we assume the legislature meant exactly what it said and determine the meaning of the statutes from their language alone. *See Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997); *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 708, 985 P.2d 262 (1999). On the other hand, if the statutory language is ambiguous, we resort to the tools of statutory construction to ascertain and give effect to the legislature's intent and purpose. *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998).

■ A statute is ambiguous when it is fairly susceptible to two or more reasonable interpretations. *Sacred Heart Med. Ctr. v. Dep't of Revenue*, 88 Wn. App. 632, 636, 946 P.2d 409

---

[3] The court based this determination on RCW 36.94.910, which states, "[a]ny act inconsistent [with this chapter] shall be deemed modified to conform with the provisions of this chapter for the purpose of this chapter only."

(1997) (citing *Schelinski v. Midwest Mut. Ins. Co.*, 71 Wn. App. 783, 787, 863 P.2d 564 (1993)). In its Memorandum Opinion, the trial court indicated that the "juxtaposition" of RCW 35A.47.040 and RCW 36.94.140 created "uncertainty," "inconsistency," and "ambiguity." Clerk's Papers at 230-32. Although the trial court concluded that each statute was clear on its own, the opinion also refers to the statutes as "ambiguous." Clerk's Papers at 231. Significantly, neither party has argued to us that either of the statutes in question is ambiguous. We agree with them that neither RCW 35A.47.040 nor RCW 36.94.140 is ambiguous.

▆ ▆ The more pertinent question is whether the statutes conflict. Where two statutes are in apparent conflict, we reconcile them, if possible, so that each may be given effect. *In re Personal Restraint of King*, 110 Wn.2d 793, 799, 756 P.2d 1303 (1988). Statutes must be read together to achieve a "harmonious total statutory scheme . . . which maintains the integrity of the respective statutes." *State v. O'Neill*, 103 Wn.2d 853, 862, 700 P.2d 711 (1985).

Neither party argues that RCW 35A.47.040 and RCW 36.94.140 are inconsistent with each other. In its opinion, the trial court concluded that the statutes are inconsistent because Lakewood's authority to "permit and regulate" the use of public streets for sewer pipes under RCW 35A.47.040 is "clearly inconsistent" with the County's authority to "regulate" its own sewer system under RCW 36.94.140. Clerk's Papers at 233.

In our view, the statutes are not inconsistent with each other. RCW 35A.47.040 authorizes Lakewood to "permit and regulate . . . and to grant nonexclusive franchises for the use of public streets . . . for . . . sewer and other . . . facilities." It does not authorize Lakewood to regulate or control a sewer system but, rather, it authorizes Lakewood to regulate the use of its streets. RCW 36.94.140, on the other hand, authorizes the County to operate, manage, regulate, and control a system of sewerage. It does not authorize the County to regulate the use of public

streets for any purpose. In sum, we are satisfied that the statutes are not inconsistent with each other.

The trial court resolved what it concluded was the "inconsistency" between these statutes by concluding that RCW 35A.47.040 must be "construed ('modified') to remove county sewers from the authority . . . provided to the city in the statute." Clerk's Papers at 232. In its Memorandum Opinion, the trial court explained that Lakewood still has the authority to permit and regulate and to grant nonexclusive franchises for privately owned sewers and sewers owned by public agencies other than counties, but it does not have authority to do so for county sewers.

 In modifying RCW 35A.47.040, the trial court relied on the last sentence of RCW 36.94.910, which provides in its entirety:

> This chapter shall be complete authority for the establishment, construction and operation and maintenance of a system or systems of sewerage and/or water hereby authorized, and shall be liberally construed to accomplish its purpose. Any act inconsistent herewith shall be deemed modified to conform with the provisions of this chapter for the purpose of this chapter only.

The trial court's interpretation of the statutes is inconsistent with the statutes' language and with the accepted rule of statutory construction that courts should attempt, when possible, to reconcile potential conflicts between statutes. *See King*, 110 Wn.2d at 799. RCW 36.94.910's call to modify acts to conform with chapter 36.94 RCW applies "for the purpose of this chapter only." Modifying RCW 35A.47.040 in the manner constructed by the trial court has no effect on the provisions of chapter 36.94 RCW. Specifically, excluding county sewers from the franchise authority granted to cities under RCW 35A.47.040 does not affect the authority granted to counties in RCW 36.94.140 to operate sewer systems. The modification put forward by the court is not relevant to any "purpose" of chapter 36.94 RCW and, thus, the modification is outside the intended scope of RCW 36.94.910.

RCW 35A.47.040 grants authority to Lakewood to permit and regulate and to grant nonexclusive franchises for the use of public streets for "sewer and other *private and publicly owned* and operated facilities" (emphasis added). There is nothing in the plain language of RCW 35A.47.040 to indicate that the legislature did not intend to include county sewers.

 Because the trial court's modification of the statute is outside the scope of the modifications anticipated by RCW 36.94.910, and because the exclusion clearly conflicts with the plain language of RCW 35A.47.040, the trial court erred in excluding county sewers from Lakewood's authority to grant franchises for the use of its streets for sewer systems.

Having determined that county-operated sewer systems are not excluded from RCW 35A.47.040, we look to that statute to determine whether Lakewood may require the County to enter into a franchise agreement to use Lakewood's streets to operate a sewerage system.

RCW 35A.47.040 provides that Lakewood has the authority to *"grant* nonexclusive franchises for the use of public streets" (emphasis added). To "grant" means to "allow," "to permit as a right [or] privilege," or to "give, bestow, confer," as in to "grant a loan to an applicant." WEBSTER'S NEW INTERNATIONAL DICTIONARY 989 (3d ed. 1969). In contrast, to "require" means to "claim by right and authority: insist upon," to "demand," or "to impose a compulsion or command upon [someone] to do something." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1929 (3d ed. 1969).

We assume that the legislature means exactly what it says. *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 964, 977 P.2d 554 (1999). The legislature used the word "grant" in RCW 35A.47.040, not "require," and without evidence of contrary intent in the statute, we assume that the statute means "grant" and not "require." *See Erection Co. v. Dep't of Labor & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993).

"A franchise [is] . . . the right of a public utility to make

use of the city streets for the purpose of carrying on the business in which it is generally engaged, that is, of furnishing service to members of the public generally." *Wash. Fruit & Produce Co. v. City of Yakima*, 3 Wn.2d 152, 157-58, 100 P.2d 8, 103 P.2d 1106 (1940). Franchises have the legal status of contracts. *Gen. Tel. Co. of the N.W., Inc. v. City of Bothell*, 105 Wn.2d 579, 584, 716 P.2d 879 (1986). "Until both parties accept the terms of a franchise, it lacks the essentials of a contract; it is a mere proposition." *Gen. Tel.*, 105 Wn.2d at 586. A " 'city cannot . . . compel the [utility] to accept its terms for the continued occupation of the streets.' " *Gen. Tel.*, 105 Wn.2d at 586 (quoting 12 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 34.51, at 137 (3d ed. 1970)). In *General Telephone*, the city sought to impose a franchise term that the utility was unwilling to accept. In this case, Lakewood and the County negotiated regarding terms of a potential franchise agreement for the County's use of Lakewood's streets to operate a sewer system, but the County did not accept the terms Lakewood offered. Until both parties agree on terms, no franchise exists, and Lakewood may not compel the County to agree to its terms.

For the reasons stated above, we conclude that the trial court did not err in concluding that Lakewood may not require the County to enter into a franchise agreement for the operation of sewer lines and facilities under Lakewood's streets.

II. *Lakewood's authority to charge the County a fee for the right to operate sewer lines and facilities under Lakewood's streets*

The trial court held that Lakewood may not charge the County a franchise fee "in excess of the city's administrative costs" for the right to operate regional sewer lines beneath Lakewood's streets. Clerk's Papers at 230. We review this conclusion de novo. *See Bishop*, 137 Wn.2d at 523.

The trial court's Memorandum Opinion does not address the question of whether the City may charge any fee at all if a franchise agreement is reached, nor does it define "administrative costs." We must determine (A) whether the

proposed franchise fee is a "fee" or a "tax," (B) whether the City has the power to charge a fee as part of a franchise agreement, and (C) the types of fees that might be included as part of any franchise agreement between these parties.

(A) Fee vs. tax.

■ Cities may not impose taxes without express legislative authority. CONST. art. VII, § 9; *Carkonen v. Williams*, 76 Wn.2d 617, 627, 458 P.2d 280 (1969). The County contends that Lakewood wants to impose a franchise fee that is actually an impermissible tax.

■ Whether a charge imposed by a governmental entity is a tax or a regulatory fee depends upon three factors: (1) whether the primary purpose is to raise revenue (tax) or to regulate (regulatory fee); (2) "whether the money collected must be allocated only to the authorized regulatory purpose"; and (3) "whether there is a direct relationship between the fee charged and the service received by those who pay the fee or between the fee charged and the burden produced by the fee payer." *Covell v. City of Seattle*, 127 Wn.2d 874, 879, 905 P.2d 324 (1995). In examining these factors, we conclude that the franchise fee that Lakewood wishes to charge the County is a "fee" and not a "tax."

(1) Primary Purpose. In distinguishing between a "fee" and a "tax," if the charges are intended to raise money, they are taxes; if the charges are primarily tools of regulation, they are not taxes. *Hillis Homes, Inc. v. Pub. Util. Dist. No. 1*, 105 Wn.2d 288, 299, 714 P.2d 1163 (1986). The County contends that Lakewood's purpose in imposing a franchise fee is to raise revenue and, therefore, the franchise fee is an impermissible "tax." The record does not support this assertion. Throughout these proceedings, Lakewood has maintained that the franchise fee is regulatory and that its intent is to reimburse Lakewood for its costs associated with the County's operation of a sewerage system under Lakewood's streets. There is no evidence that Lakewood intends to use the franchise fee to raise revenue for other purposes. This supports our conclusion that the proposed franchise fee is a "fee" and not a "tax."

(2) <u>Allocation of collected fees</u>. As discussed above, the record indicates that Lakewood intends to allocate any collected franchise fee to Lakewood's costs associated with the County's operation of a sewerage system under Lakewood's streets.

(3) <u>Relationship between fees and services</u>. There is a direct relationship between the fee charged (the franchise fee) and the "burden produced by the fee payer" (the costs to Lakewood associated with the County's operation of a sewerage system under Lakewood's streets). Considering these three *Covell* factors, we conclude that the proposed franchise fee meets the criteria for a fee and is not an impermissible tax.

However, the *Covell* factors are designed to determine whether a *regulatory* fee is a fee or a tax. No Washington case has directly addressed whether a franchise fee should be considered as a regulatory fee when determining whether the fee is a tax. Other jurisdictions have held that "franchise fees" that are similar in nature to the proposed fee here are fees and not taxes. *See, e.g., Alachua County v. Florida*, 737 So. 2d 1065 (Fla. 1999) (franchise fees collected from utilities are not taxes); *Santa Rosa County v. Gulf Power Co.*, 635 So. 2d 96 (Fla. Dist. Ct. App. 1994) (franchise fee to use right-of-way is not a "tax"); *City of Chi. v. Chi. Fiber Optic Corp.*, 287 Ill. App. 3d 566, 678 N.E.2d 693, 698 (1997) (franchise fee for telecommunications corporation's use of city public ways and tunnel system for fiber optic cable is not an illegal "toll"); *City of Chi. v. Ill. Commerce Comm'n*, 281 Ill. App. 3d 617, 666 N.E.2d 1212, 1217 (1996) (franchise fees and taxes have different purposes meriting distinct treatment); *BellSouth Telecomms., Inc. v. City of Orangeburg*, 337 S.C. 35, 522 S.E.2d 804, 806 (1999) ("tax" is enforced contribution to support government, but "fee" is charge for particular benefit to payer).

■ In sum, the franchise fee Lakewood seeks is a "fee" and not an impermissible "tax" as long as the amount of the fee is limited to Lakewood's costs associated with the

County's operation of a sewerage system under Lakewood's streets.

(B) Right to charge fees as part of a franchise agreement.

If a city grants a franchise to a utility, it may do so on its own terms, conditions, and limitations. *City of Spokane v. Spokane Gas & Fuel Co.*, 175 Wash. 103, 107, 26 P.2d 1034 (1933). When a franchisee acquires the right to occupy a portion of the streets for utility purposes, the franchise fee is held to be in the nature of rental for the use and occupation of the streets. *Spokane Gas*, 175 Wash. at 108. The right to impose such a franchise fee arises in contract. *Spokane Gas*, 175 Wash. at 109.

In *Athens-Clarke County v. Walton Electric Membership Corp.*, 265 Ga. 229, 454 S.E.2d 510 (1995), the Supreme Court of Georgia held that a unified government (city-county) had an implied right to collect a franchise fee from an electric membership corporation for its operation on rights-of-way, even absent an agreement between the unified government and the corporation. The court found that the "[p]ayment of a franchise fee is a plausible prerequisite to the grant of a franchise." *Athens-Clarke*, 454 S.E.2d at 512.[4]

 We hold that if the parties in this case enter into a franchise agreement to operate the County sewerage system under Lakewood's streets, that agreement is a contract that gives Lakewood an implied right to collect a franchise fee from the County for the use and occupation of the streets. *See Spokane Gas*, 175 Wash. at 107.

(C) Charges that may be included in the franchise fee.

The third *Covell* factor ("whether there is a direct relationship between . . . the fee charged and the burden produced by the fee payer") indicates that a franchise fee that

---

[4] *But see S.W. Gas Corp. v. Mohave County*, 188 Ariz. 506, 937 P.2d 696 (1997), where the Court of Appeals of Arizona held that the "plausible prerequisite" standard from *Athens-Clarke* was not enough to satisfy the more restrictive Arizona law, which required that the right to charge a fee be "necessarily implied" from the statute requiring a utility to obtain a franchise from the county in which it operates. *S.W. Gas*, 937 P.2d at 700.

covers the franchisor's costs incurred in the creation and administration of the franchise is allowable. *Covell*, 127 Wn.2d at 879. Lakewood denies that the purpose of the franchise fee is to raise revenue but contends, rather, that it seeks only to recoup its costs associated with the franchise.

The trial court's Memorandum Opinion does not define "administrative costs" or indicate what costs might be permissible to recoup via the franchise fee. Nor does the phrase "administrative cost" have a specific meaning in Washington law. The few statutory definitions[5] and the dictionary definition[6] of the phrase differ and do not apply directly to the franchise involved in this case.

Likewise, there is scant mention in the record indicating the parties' negotiations about what costs, "administrative" or otherwise, might be included as part of the franchise fee. In its briefs, Lakewood maintains that it is seeking to charge the County for "the city's full costs and full impacts of the county's sewer system on city property," including the "additional oversight and associated costs incurred from county maintenance and repair of county owned facilities within city right-of-ways" and office and field-related costs. Am. Br. of Appellant at 26; Reply Br. of Appellant at 17, 19.

Considering the lack of precise definition of "administrative costs," we find that the costs that Lakewood seeks to recoup through the proposed franchise fee fall under the

[5] *E.g.*, RCW 36.68.570 (park and recreation service area may reimburse county for administrative costs incurred in providing accounting, clerical or other services); RCW 50.65.143 (in Washington Service Corps, " 'administrative costs' include, but are not limited to, program planning and evaluation, budget development and monitoring, personnel management, contract administration, administrative payroll, development of program reports, and administrative office space costs and utilities"); RCW 70.190.010(1) (for purposes of Family Policy Council, "administrative costs" are "costs associated with procurement; payroll processing; personnel functions; management; maintenance and operation of space and property; data processing and computer services; accounting; budgeting; auditing; indirect costs; and organizational planning, consultation, coordination, and training").

[6] *Black's Law Dictionary* does not define "administrative costs" but defines "administrative expense[s]" as "expense[s] incurred in running a business, as distinguished from . . . expense[s] incurred in manufacturing or selling; overhead. . . . [e]xamples include executive and clerical salaries, rent, utilities, and legal and accounting services." BLACK'S LAW DICTIONARY 599 (7th ed. 1999).

general category of the "administrative costs" contemplated by the trial court.

Under *Covell*, a fee designed to cover these costs is a permissible fee, while a fee exceeding these costs would be impermissible. *See Covell*, 127 Wn.2d 874. Therefore, we hold that the trial court did not err in holding that Lakewood may not charge the County a franchise fee that exceeds Lakewood's administrative costs related to the County's right to operate its regional sewer lines beneath Lakewood's streets.

The trial court's order is affirmed.

HOUGHTON and BRIDGEWATER, JJ., concur.