[No. 25417. *En Banc.* July 20, 1935.]

THE CITY OF SPOKANE, *Appellant,* v. SPOKANE GAS & FUEL COMPANY, *Respondent.*[1]

[1]Reported in 47 P. (2d) 671.

*G. M. Ferris* and *Louis A. Conyard,* for appellant.
*Graves, Kizer & Graves,* for respondent.

BEALS, J.—May 12, 1904, the city of Spokane by ordinance granted a franchise to Roger H. Williams, authorizing the laying of gas mains in the streets for the purpose of distributing fuel and illuminating gas. The franchise was accepted by the grantee, and in due time a system for the manufacture and distribution of gas was installed pursuant to the franchise, of which defendant, Spokane 'Gas & Fuel Company, is now the owner. The franchise was granted for the period of forty-one years, it provided for a maximum charge to consumers of one dollar fifty cents per thousand cubic feet, and vested in the city council power to regulate rates; this portion of the franchise having, of course, been superseded by the statute establishing the state department of public works, in which body the authority to regulate rates has been vested for many years. Section 4 of the franchise ordinance reads as follows:

"The grantees herein, their successors or assigns, in consideration of the granting of this franchise, shall, for the first twenty-five years from the time of the passage of this ordinance granting the same, pay to and for the use of the said City of Spokane, an amount equal to two per centum of their gross receipts from the sale of gas in the said city, and the percentage to be thereafter paid shall be fixed at the same time as the rate to be charged for gas as herein provided; the pay-

ments to be made on or before January 10th of each year for the gas sold during the preceding year, and the amount of such gross receipts to be ascertained as follows: . . ."

Under this section, the company paid to the city for the twenty-five year period ending June, 1929, the percentage of its gross receipts specified in the ordinance, no payments having been made to the city after the expiration of the period referred to. February 8, 1932, the city council passed an ordinance requiring the payment by the company of two per centum of its gross receipts for the period beginning June 15, 1929, and ending December 31, 1931. August 29, 1932, another ordinance was passed, requiring the payment of a similar percentage commencing January 1, 1932.

Thereafter, this action was instituted by the city for the purpose of collecting the payments provided for by the ordinance enacted February 8, 1932. The company answered, alleging by way of an affirmative defense that the ordinance was passed without notice to defendant, and without giving it an opportunity to be heard; that the rate was unreasonable and arbitrary, and fixed by the city capriciously and without investigation or study. The cause was tried before the court and a jury, and at the close of the evidence the court directed the jury to return a verdict in plaintiff's favor for the full amount sued for. From a judgment upon this verdict, the defendant appealed to this court, which, by an *En Banc* decision, reversed the judgment and remanded the cause for further proceedings. *Spokane v. Spokane Gas & Fuel Co.*, 175 Wash. 103, 26 P. (2d) 1034.

Thereafter, the city filed an amended and supplemental complaint, seeking recovery upon both of the 1932 ordinances above referred to. Defendant answered, alleging that two per centum of the gross receipts con-

stituted an unreasonable, excessive and discriminatory charge, tendered the city certain sums, which, defendant alleged, represented reasonable amounts to be paid to the city under the franchise, and prayed for dismissal of the action.

The cause was tried to the court without a jury, the court finding that, subsequent to June 14, 1929, a rate of one-half of one per cent of the gross revenue obtained by the defendant has been a reasonable rate to pay to the plaintiff for the rights enjoyed by defendant under the franchise, and that any rate in excess of that specified is unreasonable and excessive. From a judgment entered pursuant to these findings, awarding plaintiff judgment against defendant for an amount computed on the basis found by the trial court, the plaintiff, city of Spokane, has appealed.

Appellant assigns error upon the ruling of the court reducing the two per cent rate fixed by the ordinances of the city above referred to to a rate equal to one-half of one per cent; appellant also contending that the trial court erred in refusing to admit certain testimony offered by appellant, in admitting certain evidence offered by respondent, and, finally, in refusing to allow interest on the amounts for which judgment was rendered in appellant's favor.

Upon the first appeal hereinabove referred to, it was held that the trial court had erred in refusing to admit in evidence several franchises granted to other public utilities by the city of Spokane, subsequently to the granting of the franchise to the gas company, a majority of this court being of the opinion that such evidence was competent and material. It was also held that duly qualified experts, called as witnesses, might state their opinions as to the reasonableness or unreasonableness of the rate demanded by the city.

The distinction between acts of a municipal corpo-

ration in its governmental capacity and its proprietary acts was recognized. It was held, of course, that, in enacting the original franchise ordinance, the city was acting in its governmental capacity, its right to grant a franchise, if at all, upon its own terms, conditions and limitations, being expressly recognized.

It was also held that, in fixing sums to be paid by the owner of the franchise after the expiration of the twenty-five year period, the city could not, by its mere fiat, impose upon the owner of the franchise any burden which the city might wish to impose, but that the company might be heard in protest if, in its opinion, the city was endeavoring to collect an unreasonable rate. It was also held that the reciprocal rights and obligations of the parties were to be measured by the contract between them, consisting of the franchise and any modifications thereof which might have become a part of the agreement between them, and that the charges imposed pursuant to the franchise were neither a tax nor a license, but rather, in the instant case, in the nature of rental for the use and occupation of the streets.

It was further held that the acceptance of the original franchise, containing a provision for the payment of a sum equal to two per cent of the gross receipts for the first twenty-five years of the franchise term, was evidence to the effect that that same amount, as fixed by the later ordinances, was reasonable, but that this evidence was not conclusive but amounted simply to one element to be considered by the trier of the facts.

On this appeal, full effect must, of course, be given to the decision of this court on the first appeal, which has become the law of the case.

Appellant offered, as part of its case, the original franchise ordinance of 1904, the ordinances of Febru-

ary 8 and August 29, 1932. Appellant called as witnesses on its behalf three of its city commissioners, who were members of the city council during the year 1932, and called several other witnesses, who testified on various phases of the questions at issue, one as an expert. Respondent introduced in evidence maps showing the city and its growth, a business survey, statements of its own revenue and expense, and its rates and earnings, together with franchises granted by appellant to other public service companies, including a telephone company and a heating company.

It appears that, in 1910, a city charter was adopted by the electors of Spokane, which provided, among many other things, that a minimum of one per cent of gross earnings should be paid to the city as compensation for franchises granted by it. In 1922, by vote of the people, the section of the charter referring to this matter was amended to read as follows:

"No franchise, other than franchises for steam railroads, street railways, interurban railways, or other carriers of passengers upon the streets of the city, shall be granted without provision for proper compensation to the city therefor. Whenever the gross earnings of the grantee from the use of a particular franchise within the city are susceptible of ascertainment, the compensation may be fixed at not less than one per cent of such gross earnings." Charter of City of Spokane, art. XI, § 102.

This section, of course, refers to the granting of franchises in the first instance, and exempts from the mandatory provisions of the section, utilities engaged in carrying passengers upon the streets of the city. Respondent argues with some force that the adoption by the people of the amendment to the city charter above quoted indicates that, upon such a question as is now before us, special conditions should be considered.

A franchise granted by the city of Spokane during the year 1924 to a telegraph company is in evidence, under which the grantee is required to pay to the city five per cent of its gross revenue. Under another franchise, granted in 1905 to the telephone company, the grantee pays three thousand dollars a year, in addition to furnishing to the city twenty-five free telephones and allowing the city exclusive use of a cross-arm on each pole maintained under the franchise. Under another telephone franchise, granted in 1915, one per cent of gross revenue was to be paid, and one hundred free telephones furnished to the city. This franchise was repealed by referendum, but upon the question here to be determined the repealed franchise should be considered in connection with the other telephone franchises above referred to.

Respondent offered in evidence a franchise granted in 1914, granting the use of the streets for the purpose of distributing heat. This franchise called for the payment of one per cent of the gross earnings, with a minimum of $2,500 per year. The utility operating under this franchise is, in its functions, more nearly like respondent than any other operating in Spokane. Under its franchise, the heating company uses five and one-fourth miles of underground conduits in the business district. Respondent company maintains one hundred fifty-five miles of gas mains. It is, of course, true that the use by any company of the surface of the streets, either for trackage or for poles carrying wires, is a servitude which interferes far more with ordinary pedestrian or vehicular traffic than is caused by underground pipes or conduits of any sort.

As above stated, certain officers of the city of Spokane testified on its behalf, some who participated in the enactment of the 1932 ordinances stating the reasons which motivated them in enacting such legislation.

Respondent justly criticizes much of the testimony introduced on appellant's behalf, and argues that no logical reasons were assigned for specifying two per cent of the gross revenue received by respondent, rather than a less percentage thereof. In this connection, however, it must be remembered that respondent itself admits that it should pay to the city some percentage of its gross revenue for the privilege of occupying the city streets, and that it is often a difficult matter to state a very logical reason why such a payment as is now being considered should be computed upon one particular percentage rather than a figure a little higher or a little lower. While, under the decision on the first appeal in this case, other franchises granted by the city subsequent to the granting of the original franchise in 1904 were properly admitted in evidence, it appears that all of the franchises received as exhibits by the trial court, with the exception of the heating company franchise, differ so widely from the franchise under which respondent is engaged in business as to render such franchises of slight materiality in passing upon the question here presented. This applies not only to franchises granted by appellant city, but to testimony as to rates paid by utility companies in cities other than Spokane. The sum total of this evidence amounts to little more than that utility companies pay a greatly varying percentage of gross revenue for the privilege of using the public streets, many paying nothing at all.

Respondent introduced considerable evidence to the effect that its business was not being conducted at a profit. It cannot be disputed but what the business of manufacturing and distributing gas for fuel and illuminating purposes has for many years been on the decline; gas having been largely superseded by electric current, particularly for purposes of illumination.

Wires to carry electrical energy can be placed at much less expense than underground mains for carrying gas. It is also true that, for illuminating purposes, electricity possesses many advantages over the other product.

It clearly appears from the evidence that respondent has not attempted to extend its system to the newer portions of the city, and that it has in every way suffered severely from competition on the part of utilities furnishing electric power. On the other hand, appellant argues that the use by respondent of the streets and alleys of the city is the same whether respondent's operations are profitable or the reverse, and that the amount of the reasonable payment which respondent should make to the city under its franchise should not be determined in consideration of the fact that respondent's operations do not produce much net income.

It appears from the record that companies operating under gas franchises in several other cities pay to their respective municipalities anywhere from one to two and one-half per cent of the gross income, in other cities a fixed sum is paid, while in many others no payment at all is made. It also appears from the evidence that respondent pays to Cities Service Company, its parent company, which controls respondent and many other gas companies, one and three-fourths per cent of its gross earnings for "supervision" and other services alleged by respondent to be valuable.

Assuming that the service for which the one and three-fourths per cent of the gross income is paid is helpful to respondent, and that respondent gets some value for the payment which it makes to the parent company, it must also be admitted that the privilege of using the city's streets is also valuable; and appellant argues that it should not be called upon to suffer alone because of respondent's unfortunate financial condition, while respondent's associate, and indeed

parent, company still continues to exact the same percentage of respondent's gross receipts that it received during the years when respondent was prospering.

In our opinion, all of the matters mentioned should be considered in fixing the rate which respondent should be required to pay. The fixing of the percentage by the city ordinances is some evidence that the rate fixed is reasonable; the charter provision above quoted referring to "proper compensation" to be paid by grantees of all but certain classes of franchises is to be considered. Rates fixed in other franchise ordinances are to be accorded weight, although in this case we find them of little aid in determining a reasonable rate to be paid by respondent. The present financial condition of respondent, its earnings in the past, its probable earnings in the future, should be weighed, although the fact that a public utility may be producing no net return whatever on its investment would not of itself even tend to prove that it should pay to the city nothing for use of the streets. All the evidence received was competent to be considered by the court in deciding the case.

No authorities are cited which aid us particularly in determining the question of the amount of the percentage which respondent shall pay. In this connection, we have on the one hand the legislative judgment of the city, and on the other the judicial determination of the matter by the trial court as embodied in its judgment. It is true, as argued by respondent, that there is no definite value, whether it be called rental or something else, for the use of the city streets. The manner of occupancy of the streets by the different utilities varies so greatly that there is no basis upon which a general use value can be estimated. Each party herein very successfully attacks the weight of much of the evidence introduced by the other; some evi-

dence remains, however, which carries probative force bearing on the question to be determined.

After careful consideration, we are of the opinion that the trial court, in fixing the percentage to be paid by respondent at one-half of one per cent of its gross receipts, fixed the amount of such payments at too low a figure. We hold that the amount to be paid should be fixed at one per cent of the gross receipts realized by respondent from the sale of gas in the city of Spokane; this amount to be paid from the date the payments under the original franchise ceased and to continue until changed by competent authority. We believe that the percentage which we have fixed represents, as nearly as can be determined, a just and reasonable rate to be paid by respondent and received by appellant.

Appellant contends that it should receive interest upon the amount to be paid by respondent based upon the percentage of gross receipts fixed by the court. It is true, as appellant contends, that interest will generally be allowed upon unliquidated demands, when the amount of the demand can be ascertained by mere computation. *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837. In the case at bar, something more than a mathematical computation was required; that is, the fixing of the percentage by judicial decree. Under these circumstances, the trial court did not err in refusing to direct that respondent pay interest upon the amount which is to be paid for the period which has elapsed since payments under the franchise ordinance ceased.

The judgment appealed from is modified by increasing the percentage of respondent's gross receipts, which respondent will pay to appellant, from one-half of one per cent to one per cent; this modification applying both to the period from June 14, 1929, to De-

cember 31, 1931, and from the latter date until the expiration of the period fixed by the ordinance enacted August 29, 1932. The cause is remanded, with instructions to modify the judgment as above set forth; the amounts to be paid by respondent to appellant to be also modified by computing the same upon the basis of one per cent of the gross receipts, instead of one-half of one per cent thereof.

MILLARD, C. J., MAIN, MITCHELL, and TOLMAN, JJ., concur.

GERAGHTY, J., took no part.

BLAKE, J. (dissenting)—It is to be remembered that we are not here concerned with the exercise of a sovereign power by the city. It is here as any other private party to a contract providing for fixing of a reasonable charge for the use of its property, namely, its streets. *Spokane v. Spokane Gas & Fuel Co.*, 175 Wash. 103, 26 P. (2d) 1034. I take it the "reasonable value" of such a franchise right is the "usable value" —the value to the holder operating under it.

In 1904, the right to lay gas mains in the streets of the city of Spokane was a valuable right. At that time, as an artificial fuel, gas was without a competitor. It was then a strong competitor in the lighting field. Now it is not a competitor in the latter field, and is almost completely outdistanced in the former by electricity and oil. It is still used for cooking by a substantial number of people. But it is not used by a sufficient number to make operation, under the franchise, profitable. The evidence shows that, for profitable operation, the company must have eighty-five customers per mile of main. It has but thirty-eight. In 1910, it had 11,030 customers. At the time of trial, it had but 6,121. It has plant equipment to serve three times that number. But customers are not available.

One cannot read this record without being convinced that gas companies are "on the way out." Yet they are still a great public convenience and necessity. Without gas, a substantial number of citizens who cannot afford electricity would be driven back to the use of coal and wood. It is to their interest that the gas company be not driven from the field—just as it is to the interest of people who cannot afford automobiles that street cars be retained. Moved by that consideration, the city has relinquished its right to franchise charges from the street railway company. It might do well to do the same for the gas company. For the franchise of the street railway company is just as valuable, or (depending on the point of view) as valueless, as the gas franchise. It is not conceivable that anyone would, at this time, apply for either a street railway or gas franchise in the city of Spokane—much less agree to pay for the privilege of operating under one.

The fact that this company is being mulcted by its parent holding company of one and three-fourths per cent of its gross revenues is, to my mind, wholly immaterial. The practice of holding companies of levying tribute on their operating companies presents an entirely different problem—a problem which the courts may soon be called on to examine at the behest of some injured minority or preferred stockholder. But it can have no possible bearing upon the reasonable value, under this franchise, of the use of the streets by the defendant.

I think the judgment of the trial court should be affirmed.

HOLCOMB, J., concurs with BLAKE, J.

STEINERT, J. (dissenting)—It is apparent from a reading of the prevailing opinion that the result is but a guess, so far as the rate to be charged the company

488

is concerned. The trial judge was certainly in as good a position as we now are to determine a question of fact such as was presented in this case. I am satisfied that he was in a much better position to determine that question, not only because he saw and heard the witnesses, but also because of his long residence in the community and his knowledge of local affairs.

I think the judgment of the trial court should be affirmed.